Martin C. Fliesler (SBN 073768) mcf@fdml.com
Rex Hwang (SBN 221079) rhwang@fdml.com
FLIESLER MEYER LLP
650 California Street, 14th Floor
San Francisco, CA 94108
Telephone:     (415) 362-3800
Facsimile:     (415) 362-2928

Joshue L. Raskin (Pro Hac Vice) jraskin@wolfblock.com
Kenneth G. Roberts (SBN 106945) kroberts@wolfblock.com
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
250 Park Avenue, 10th Floor
New York, NY 10177
Telephone:     (212) 986-1116
Facsimile:     (212) 986-0604

Attorneys for Defendants
Bel Fuse, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| HALO ELECTRONICS, INC., a Nevada Corporation<br><br>            Plaintiffs,<br><br>    vs.<br><br>BEL FUSE, INC., ELEC & ELTEK (USA) CORPORATION, WURTH ELECTRONICS MIDCOM, INC., and XFMRS, INC.,<br><br>            Defendants. | Action No. 07-06222 JCS<br><br>**DECLARATION OF JOSHUA L. RASKIN IN SUPPORT OF DEFENDANT BEL FUSE'S MOTION TO DISMISS OR TRANSFER**<br><br>Date:        **February 8, 2008**<br>Time:        **9:30 a.m.**<br>Location:  **Courtroom A, 15th Floor** |

I, Joshua L. Raskin, hereby declare as follows:

1.      My name is Joshua L. Raskin.  I am over eighteen years of age and am competent to testify about the matters set forth herein.  I have personal knowledge of the matters set forth herein.

2.      I am a member of Wolf, Block Schorr and Solis-Cohen LLP, one of the law firms

**FLIESLER
MEYER LLP**

1

1    representing Bel Buse, Inc.

2        3.      Attached hereto as Exhibit A is a true and correct copy of the complaint filed by Halo

3    Electronics, Inc. ("Halo") in *Halo Electronics, Inc. v. Bel Fuse et al.*, District of Nevada Civil Action

4    No. 2:07-cv-331-PMP-PAL (the "Nevada Action").

5

6        4.      Attached hereto as Exhibit B is a true and correct copy of the Order of the Honorable

7    Philip M. Pro, entered in the Nevada Action on December 7, 2007.

8        5.      Attached hereto as Exhibit C is a true and correct copy of the transcript of the

9    November 30, 2007 hearing before Judge Pro in the Nevada Action.

10
     6.      Attached hereto as Exhibit D is a true and correct copy of the complaint filed by Bel
11
12   Fuse, Inc. ("Bel Fuse") in *Bel Fuse, Inc. v. Halo Electronics, Inc.*, District of New Jersey Civil

13   Action No. 2:07-cv-2168-HASS-ES (the "New Jersey Action").

14       7.      Attached hereto as Exhibit E is a true and correct copy of the First Amended

15   Complaint filed by Bel Fuse in the New Jersey Action.

16
     8.      Attached hereto as Exhibit F is a true and correct copy of Halo's Answer in the New
17
18   Jersey Action.

19       9.      Attached hereto as Exhibit G is a true and correct copy of the proposed Second

20   Amended Complaint filed by Bel Fuse in the New Jersey Action.

21       10.     In May 2007, prior to the November hearing before Judge Pro, I communicated my
22
     understanding to Halo's counsel that, if and when the Nevada Action was dismissed, the Nevada
23
24   claims would be consolidated with the New Jersey Action. For example, after the Complaint in the

25   New Jersey Action was filed, Halo's counsel asked me whether Bel Fuse would agree to an

26   extension of time for Halo to respond to the New Jersey Complaint. I told Halo's counsel that, after

27   Halo completed its jurisdictional discovery in the Nevada Action, it was my prediction that Halo

28   would recognize that Bel Fuse has no contacts with the State of Nevada and that, instead of opposing

**FLIESLER
MEYER LLP**

                                                        2

1    Bel Fuse's motion to dismiss the Nevada Action, Halo would voluntarily dismiss Bel Fuse from the

2    Nevada Action and add the dismissed claims to the pending New Jersey Action.  In order to allow

3    that plan to proceed, I agreed to an extension of time under which the deadline for Halo to respond to

4    the Complaint in the New Jersey Action would be the same as the deadline for Halo to oppose Bel

5    Fuse's Motion to Dismiss in the Nevada Action, i.e., July 27, 2007.  A true and correct copy of an

6    email dated May 23, 2007 sent by me to Halo's Counsel evidencing my agreement is attached hereto

7    as Exhibit H.  Also attached (as Exhibit I) are true and correct copies of an email dated May 29,

8    2007 and a draft stipulation prepared by counsel for Halo memorializing our agreement.

9

10        11.    Attached hereto as Exhibit J is the Stipulation for extension of time for Halo to

11   respond to Bel Fuse's complaint entered in the New Jersey Action on May 31, 2007.

12

13        12.    Attached hereto as Exhibit K is a true and correct copy of an email sent by me on

14   December 7, 2007 to counsel for Halo.

15        13.    Attached hereto as Exhibit L is a true and correct copy of Bel Fuse's motion to amend

16   the complaint in the New Jersey Action.

17

18        14.    Bel Fuse's motion to amend the complaint in the New Jersey Action is scheduled to

19   be submitted to the Court on the papers without argument on January 14, 2008.

20        15.    I understand that many of Bel Fuse's witnesses and documents relevant to the claims

21   asserted in the complaint in the present action are located in New Jersey.

22

23        16.    I understand that at least three non-party witnesses possessing relevant information

24   concerning the claims asserted in the present action reside with the 100-mile subpoena power of the

25   New Jersey District Court: (1) a design engineer, Robert King, who has personal knowledge of the

26   design and application of the accused product; (2) a former Bel Fuse sales and marketing employee,

27   Arnold Sutta, who has personal knowledge of past sales and marketing of the accused products; and

28   (3) a former Bel Fuse quality control manager, Sandy Axelrad, who has personal knowledge of the

FLIESLER
MEYER LLP

3

1    early development of the accused products.

2         I declare under penalty of perjury that the foregoing is true and correct.

3    Dated at New York, New York on December 31, 2007

4

5    _____

6           Joshua L. Raskin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FLIESLER
MEYER LLP**

4

EXHIBIT A

Joshua L. Harmon, Esq. (jharmon@h-dlaw.com)
Nevada Bar No. 7004
HARMON & DAVIES, P.C.
1428 S. Jones Blvd.
Las Vegas, NV 89146
Telephone:  (702) 733-0036
Facsimile:  (702) 733-1774

Juanita Brooks (brooks@fr.com) (CA#75934)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

Michael J. Kane (kane@fr.com) (MN#247625)
William R. Woodford (woodford@fr.com) (MN#322593)
Joshua H. Bleet (bleet@fr.com) (MN#351830)
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HALO ELECTRONICS, INC., | |
| Plaintiff, | |
| v. | Civ. Action No. _____ |
| BEL FUSE INC., PULSE ENGINEERING, INC., and TECHNITROL, INC. | COMPLAINT FOR PATENT INFRINGEMENT |
| Defendants. | **JURY TRIAL DEMANDED** |

///

///

1

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Halo Electronics, Inc. files this Complaint and demand for jury trial seeking relief for patent infringement by the Defendants.  Halo Electronics, Inc. states and alleges the following:

### JURISDICTION AND VENUE

1.   This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.   This Court has personal jurisdiction over each of the Defendants because each Defendant has substantial and continuous contacts within this judicial district and/or because each Defendant has committed acts of patent infringement within this judicial district, including placing infringing products into the stream of commerce under circumstances such that each Defendant reasonably should have anticipated being subject to suit in this judicial district.  The Court also has personal jurisdiction over each of the Defendants because the acts of patent infringement are aimed at this judicial district and/or have effect in this judicial district.

3.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

### THE PARTIES

4.   Plaintiff Halo Electronics, Inc. ("Halo") is a corporation organized and existing under the laws of the state of Nevada, and having its principal place of business at 3005 East Post Road Front, Las Vegas, Nevada.

5.   Defendant Bel Fuse Inc. is a corporation organized and existing under the laws of the state of New Jersey.  Bel Fuse Inc.'s headquarters is located at 206 Van Vorst Street, Jersey City, New Jersey.

2

6. Defendant Pulse Engineering, Inc. is a corporation organized and existing under the laws of the state of Delaware. Pulse Engineering, Inc.'s worldwide headquarters is located at 12220 World Trade Drive, San Diego, California.

7. Defendant Technitrol, Inc. is a corporation organized and existing under the laws of the state of Pennsylvania. Technitrol, Inc.'s corporate headquarters are located at 1210 Northbrook Drive, Suite 470, Trevose, Pennsylvania.

8. Defendant Pulse Engineering, Inc. is a subsidiary of Technitrol, Inc.

**<u>COUNT I</u>**
**(Patent Infringement)**

9. Halo restates and realleges the preceding paragraphs of this Complaint.

10. On August 12, 1997, United States Patent No. 5,656,985 ("the '985 patent") entitled "Electronic Surface Mount Package" was duly and legally issued by the United States Patent and Trademark Office. Halo owns the '985 patent by assignment. A true and correct copy of the '985 patent is attached as Exhibit A.

11. On October 2, 2001, United States Patent No. 6,297,720 ("the '720 patent") entitled "Electronic Surface Mount Package" was duly and legally issued by the United States Patent and Trademark Office. Halo owns the '720 patent by assignment. A true and correct copy of the '720 patent is attached as Exhibit B.

12. On October 2, 2001, United States Patent No. 6,297,721 ("the '721 patent") entitled "Electronic Surface Mount Package" was duly and legally issued by the United States Patent and Trademark Office. Halo owns the '721 patent by assignment. A true and correct copy of the '721 patent is attached as Exhibit C to this Complaint.

13. On November 20, 2001, United States Patent No. 6,320,489 ("the '489 patent"), entitled "Electronic Surface Mount Package With Extended Side Retaining Wall," was duly and

legally issued by the United States Patent and Trademark Office. Halo owns the '489 patent by assignment. A true and correct copy of the '489 patent is attached as Exhibit D.

14. On February 5, 2002, United States Patent No. 6,344,785 ("the '785 patent"), entitled "Electronic Surface Mount Package," was duly and legally issued by the United States Patent and Trademark Office. Halo owns the '785 patent by assignment. A true and correct copy of the '785 patent is attached as Exhibit E.

15. On December 16, 2003, United States Patent No. 6,662,431 ("the '431 patent"), entitled "Electronic Surface Mount Package," was duly and legally issued by the United States Patent and Trademark Office. Halo owns the '431 patent by assignment. A true and correct copy of the '431 patent is attached as Exhibit F.

16. Defendants have been and are infringing, actively inducing others to infringe, and/or contributing to the infringement of the '985, '720, '721, '489, '785, and '431 patents.

17. Upon information and belief, Defendants have been and are infringing the '985, '720, '721, '489, '785, and '431 patents with knowledge of one or more of the patents, and thus Defendants' infringement is willful.

18. Upon information and belief, Defendants will continue to infringe the '985, '720, '721, '489, '785, and '431 patents unless and until they are enjoined by this Court.

19. The Defendants have caused and will continue to cause Halo irreparable injury and damage by infringing the '985, '720, '721, '489, '785, and '431 patents. Halo will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until the Defendants are enjoined from infringing the '985, '720, '721, '489, '785, and '431 patents.

///

///

4

## **PRAYER FOR RELIEF**

WHEREFORE, Halo respectfully requests that this Court:

(1)    Enter judgment that Defendants have infringed the '985, '720, '721, '489, '785, and '431 patents;

(2)    Enter an order permanently enjoining Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the '985, '720, '721, '489, '785, and '431 patents;

(3)    Award Halo damages in an amount sufficient to compensate it for Defendants' infringement of the '985, '720, '721, '489, '785, and '431 patents, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

(4)    Treble the damages awarded to Halo under 35 U.S.C. § 284 by reason of Defendants' willful infringement of the '985, '720, '721, '489, '785, and '431 patents;

(5)    Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Halo its attorney fees, expenses, and costs incurred in this action; and

(6)    Award Halo such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Halo demands a trial by trial on all issues appropriately triable by a jury.

Dated: March 15, 2007                     HARMON & DAVIES

By:    /s/ Joshua L. Harmon, Esq.
      Joshua L. Harmon, Esq.
      Nevada Bar No. 7004
      HARMON & DAVIES, P.C.
      1428 S. Jones Blvd.
      Las Vegas, NV 89146
      Telephone: (702) 733-0036
Attorney for Plaintiff

HARMON & DAVIES, P.C.
ATTORNEYS AT LAW

5

# EXHIBIT B

1

2

3

4                  UNITED STATES DISTRICT COURT

5                       DISTRICT OF NEVADA

6                              * * *

7

8   HALO ELECTRONICS, INC.,          )      2:07–CV-00331-PMP-PAL
                                      )
9            Plaintiff,               )          **ORDER**
                                      )
10  vs.                               )
                                      )
11  BEL FUSE, INC., PULSE             )
    ENGINEERING, INC., and            )
12  TECHNITROL, INC.,                 )
                                      )
13           Defendants.              )
                                      )
14  _____  )

15          Before the Court for consideration is Defendant Bel Fuse, Inc.'s Motion to

16   Dismiss Halo Electronics' First Amended Complaint for Lack of Personal Jurisdiction

17   (Doc. #54), filed August 13, 2007.  On November 30, 2007, the Court conducted a

18   hearing regarding Bel Fuse's fully briefed motion.

19          Plaintiff Halo's first amended complaint asserts a claim for patent infringement

20   against Defendant Bel Fuse and Co-defendants' Pulse Engineering and Technitrol.

21   Bel Fuse contends that notwithstanding the opportunity to conduct jurisdictional

22   discovery, Halo's amended complaint fails to allege facts sufficient to support personal

23   jurisdiction over Bel Fuse in the State of Nevada.  Halo responds that Bel Fuse

24   maintains continuous and systematic contacts with Nevada which make it subject to

25   general personal jurisdiction in this Court.  Halo further argues that this Court has

26   specific jurisdiction over Bel Fuse because Bel Fuse has purposefully directed its

EXHIBIT_____ 1

1  activities at Nevada customers, Halo's infringement claim relates to Bel Fuse's Nevada

2  activities, and the exercise of jurisdiction over Bel Fuse is reasonable and fair

3  considering all of Bel Fuse contacts with Nevada.

4          In assessing Bel Fuse's motion to dismiss for lack of personal jurisdiction, this

5  Court applies the legal standard articulated in Huffy Corp. v. Overlord Indus., 246 F.

6  Supp. 2d 1093, 1095-1096 (D. Nev. 2003).  Under the foregoing standard, the Court

7  finds that Halo has failed to meet its burden of demonstrating that general personal

8  jurisdiction exist over Bel Fuse in Nevada or that Halo's infringement claim arises out

9  of or relates to Bel Fuse's activities in Nevada so as to confer specific personal

10  jurisdiction.

11          IT IS THEREFORE ORDERED that  Defendant Bel Fuse, Inc.'s Motion to

12  Dismiss Halo Electronics' First Amended Complaint for Lack of Personal Jurisdiction

13  (Doc. #54) is GRANTED, and that Plaintiff's first amended complaint against

14  Defendant Bel Fuse, Inc., is hereby DISMISSED.

15

16  DATED:  December 5, 2007.

17

18                                              _____

19                                              PHILIP M. PRO
                                                United States District Judge

20

21

22

23

24

25

26

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION


HALO ELECTRONICS, INC.          )
                                )   CASE NO:   2:07-CV-331-PMP-PAL
            Plaintiff,          )
                                )            CIVIL
    vs.                         )
                                )        Las Vegas, Nevada
BEL FUSE, INC., ET AL.,         )
                                )     Friday, November 30, 2007
_____Defendants.____     )     (8:58 a.m. to 9:54 a.m.)


MOTION HEARING


BEFORE THE HONORABLE PHILIP M. PRO,
UNITED STATES DISTRICT JUDGE


Appearances:  (See next page)


Court Recorder: Erin Smith


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiff:                      WILLIAM R. WOODFORD, ESQ.
                                Fish and Richardson, PC
                                3300 Dain Rauscher Plaza
                                60 South 6th Street
                                Minneapolis, MN 55402

                                LORI N. NACHT, ESQ.
                                Harmon and Davies, PC
                                1428 S. Jones Boulevard
                                Las Vegas, NV 89146

Bel Fuse, Inc.:                 JOSHUA L. RASKIN, ESQ.
                                Wolf Block Schorr and Solis-Cohen, LLP
                                250 Park Avenue
                                New York, NY 10177

                                JASON FIRTH, ESQ.
                                Greenberg Traurig
                                3773 Howard Hughes Parkway
                                Las Vegas, NV 89109

Pulse Engineering, Inc.:  PAUL SWENSON PRIOR, ESQ.
                                Snell and Wilmer
                                3883 Howard Hughes Parkway
                                Suite 1100
                                Las Vegas, NV 89169

Court Recorder:                 Erin Smith

Courtroom Administrator: Donna Andrews

Transcribed by:                 Exceptional Reporting Services, Inc.
                                14493 S. Padre Island Drive
                                Suite A-400
                                Corpus Christi, TX 78418-5940
                                361 949-2988

3

1          **Las Vegas, Nevada; Friday, November 30, 2007; 8:58 a.m.**

2               **THE CLERK:**  All rise.

3               **THE COURT:**  Good morning, counsel.

4               **ATTORNEYS:**  Good morning, your Honor.

5               **THE COURT:**  Have a seat, everybody.

6          All right, we're convened in *Halo Electronics versus*

7  *Bel Fuse, Inc., et al.*, Civil S-07-331.  Please have a seat.

8               Counsel, a matter is before the Court to consider

9  defendant Bel Fuse's motion to dismiss Halo's first amended

10  complaint that, procedurally we've been through, since the

11  action was filed in March, a couple of fits and starts it looks

12  like.

13          I know that I had had a prior motion to dismiss,

14  which I granted, with leave to file an amended complaint.

15  Almost co-terminus with that, I think about a day later, there

16  was a stipulation the parties had reached which also provided

17  for not only the filing of the amended complaint but then a

18  stipulation for time to brief the new motion, or anticipated

19  motion to dismiss, and the parties have accomplished that, at

20  least as between Bel Fuse and Halo.

21          There's also reference to an action in New Jersey

22  filed, I think, in May.  I wasn't aware of that.  Maybe it was

23  something referenced before; I just didn't keep that in mind.

24          What is the status of that?  Are there similar

25  issues?  That's an action brought by Bel Fuse against Halo, as

4

1  I understand it.  Is it an infringement action?

2          MR. RASKIN:  Yes, your Honor.  That is an

3  infringement action, a patent infringement action relating to a

4  different patent.

5          THE COURT:  Oh.

6          MR. RASKIN:  Where Bel Fuse is alleging that Halo is

7  infringing a patent covering different technology.

8          THE COURT:  I see.

9          MR. RASKIN:  But that was brought in New Jersey.

10         THE COURT:  So it's not this case?

11         MR. RASKIN:  It's not this case.

12         THE COURT:  Not the flip side or the other side of

13  this case?

14         MR. RASKIN:  No, it's not.

15         THE COURT:  All right.  Does it involve matters

16  raised in any counterclaim that's filed in this action?

17         MR. RASKIN:  No, there haven't been any counterclaims

18  because there hasn't been an answer filed in the case.

19         THE COURT:  Yeah, that's right.  I guess there was

20  originally an answer, but, that's right.

21         Okay.  All right, thank you.

22         Well, let's move right on then to defendant's motion

23  to dismiss this action.  It's clear that defendants take the

24  position that there's neither general nor specific personal

25  jurisdiction available here; that the contacts or the availment

5

1    of Nevada by Bel Fuse has been insufficient, either directly or

2    through what Bel Fuse characterizes as its non-exclusive

3    representative sales distributors, I think, Aero-Tech and

4    Mirage, or something to that effect, based in Arizona and Santa

5    Clara, California.

6            **MR. RASKIN:**  That's correct.

7            **THE COURT:**  So go ahead and let me hear on behalf of

8    defendants, the position you take as to whether the Court has a

9    basis to exercise jurisdiction on this case.

10            **MR. RASKIN:**  Would your Honor like me to go up to the

11   podium?

12            **THE COURT:**  Either is fine as long as -- We have to

13   get you on the microphone is the only thing.

14            **MR. RASKIN:**  All right, well, good morning, your

15   Honor.

16            **THE COURT:**  Good morning.

17            **MR. RASKIN:**  As the Court is aware, we are here today

18   to discuss Bel Fuse's motion to dismiss Halo's complaint for

19   lack of personal jurisdiction.

20            It's plaintiff's burden to prove the existence of

21   jurisdiction.

22            **THE COURT:**  Correct.

23            **MR. RASKIN:**  And because Nevada's long arm statute is

24   co-extensive with the principles of federal due process, the

25   question is whether exercise of jurisdiction over Bel Fuse

6

1    comports with federal due process.  And what this all comes

2    down to is whether there are minimum contacts that Bel Fuse has

3    with the state of Nevada such that --

4            **THE COURT:**  Right.  There's no dispute that you don't

5    have offices -- your client doesn't have offices here, doesn't

6    maintain --

7            **MR. RASKIN:**  That's right.

8            **THE COURT:**  -- you know, business contacts beyond,

9    apparently, attending an annual trade show at which there are,

10   concededly, meetings with whoever is attending the trade show,

11   including distributors that, I assume, not just Aero-Tech --

12           **MR. RASKIN:**  That's right.

13           **THE COURT:**  -- and Meritage (phonetic), but people

14   that are distributing everywhere who happen to attend.

15           **MR. RASKIN:**  That's right.

16           **THE COURT:**  You have meetings with them, one-hour

17   meetings as I understand it.

18           **MR. RASKIN:**  That's right.

19           I'll jump right into the four.  There are four areas

20   of contact, and this relates to Halo's position as to general

21   jurisdiction.  There's general and specific.

22           **THE COURT:**  Right.

23           **MR. RASKIN:**  I'll talk about general first.

24           There are four categories of contacts that Halo

25   contends rise to the level of continuous and systematic

1     contacts for general jurisdiction.  The first are the

2     activities of Bel Fuse's independent and non-exclusive sales

3     reps.  And as your Honor just explained, Bel Fuse has two such

4     reps, Meritage and Aero-Tech.  However, those representatives

5     are unlike any of the representatives in the cases cited by

6     Halo where jurisdiction was found.  These representatives are

7     located outside of Nevada.  They are truly independent, non-

8     exclusive representatives.  They're not salaried employees.

9     They represent numerous other --

10         **THE COURT:**  Many, many manufacturers.

11         **MR. RASKIN:**  Many.  They carry line sheets that have

12     11 total manufacturers, one of which is Bel Fuse.

13         And they both testified that the great majority of

14     the work for Bel Fuse is outside of Nevada.  Nevada is simply,

15     as my client puts it, is just not a hot bed for the types of

16     electronics that Bel Fuse manufactures, so Bel Fuse does not

17     dedicate time and resources to targeting Nevada customers.

18     It's just not a part of their business plan.

19         These representatives are truly independent

20     representatives and spend most of their time outside of Nevada.

21         Now, with regard to the very small amount of sales

22     that they've made, Halo has not shown any sales by one of the

23     representatives.

24         **THE COURT:**  None of them involve the accused

25     products, am I correct?

8

1          **MR. RASKIN:**  None of them involve the accused

2   products.  And in fact, these representatives don't even push

3   the accused products.  The products that they market, the small

4   amount that they do to the Nevada residents are a totally

5   different class of products.  They're not these products.

6          And for the small amount of sales that these

7   representatives have made on behalf of Bel Fuse, they don't

8   result in direct sales by Bel Fuse.  Those representatives

9   refer the sales to distributors located outside of Nevada who

10  eventually make the sale.  So, Bel Fuse has no contact with the

11  customers that the reps are talking to on Bel Fuse's behalf.

12  That's what the testimony showed.

13         Halo hasn't cited a single case where general

14  jurisdiction -- General jurisdiction was found based on

15  contacts of truly independent, non-exclusive distributors like

16  this.  All the cases that they cited relate to independent

17  distributors that are located in the forum state, where there

18  are centrally employees of the company, an extension of the

19  company who are dedicated solely to marketing the products of

20  the defendant to the residents of the forum state.

21         That's not what we have here, your Honor, and the

22  contacts of Bel Fuse's independent non-exclusive

23  representatives cannot rise to the level of the continuous and

24  systematic contacts.

25         The second type of contacts that Halo mentions are

9

1  sales of Bel Fuse's products into Nevada.  However, once again,

2  Halo hasn't been able to find one direct sale by Bel Fuse of

3  any product, certainly not accused products.  There are no

4  accused products sold, but not one sale of a non-accused

5  product to a customer in Nevada.  All of the sales that are

6  made of Bel Fuse's products, of which there aren't many, your

7  Honor.  Like we said in our briefs, .031 percent of our total

8  sales went to --

9          **THE COURT:**  Well, plaintiff though, says that's some

10  kind of creative accounting, don't they, that there really are

11  more --

12          **MR. RASKIN:**  Well, those sales --

13          **THE COURT:**  -- are more sales than that occur in

14  Nevada?

15          **MR. RASKIN:**  Well, what Halo is referring to there

16  are sales by the independent distributors of Bel Fuse.  Bel

17  Fuse, the way their products are typically sold is through

18  independent distributors.  Bel Fuse is, for all intents and

19  purposes, a wholesaler who sells its product to distributors

20  who then market the products.

21          **THE COURT:**  So even the stream of commerce, they find

22  their way into Nevada.

23          **MR. RASKIN:**  That's true, but the stream of commerce

24  theory, which hasn't really been asserted here.

25          **THE COURT:**  Right.

1          **MR. RASKIN:**  It hasn't really been briefed; but that

2    theory would apply to specific jurisdiction.

3          **THE COURT:**  Yeah.

4          **MR. RASKIN:**  For general jurisdiction, it's been held

5    that sales by a distributor are not imputed to the manufacturer

6    unless there's an agency relationship, and we don't have that

7    here.  These are truly independent distributors.  So, what Halo

8    is trying to do is lump those sales and to try to get that

9    percentage up.  I don't have the calculation, but even if you

10   did that, the calculation would not go above one percent.  So,

11   that doesn't matter.

12         The 150 shipments that they refer to that Bel Fuse

13   made, and that's 150 shipments that amounted to $45,000 over a

14   three-year period; those shipments aren't sales by Bel Fuse.

15   Those shipments were made on sales by distributors to Nevada

16   customers where the distributor just specified a shipping

17   address as Nevada.

18         Bel Fuse didn't have any contact with those customers

19   vis-à-vis those shipments; all they did was ship them there.

20   So, it's not like the customer contacted Bel Fuse and said, 'We

21   want to buy this.'  The customer contacted an independent

22   distributor outside of Nevada and the distributor placed an

23   order with Bel Fuse and just designated a Nevada shipping

24   address.

25         So, Bel Fuse had no contact with the ultimate

11

1    customer in Nevada regarding those shipments, and therefore,

2    it's our position that there can't be certainly continuous and

3    systematic contact or targeting of residents of Nevada with

4    regard to those sales.

5           And once again, Halo hasn't cited any cases where

6    general jurisdiction is found where there's no direct sales or

7    no meaningful direct contact between the defendant and

8    residents of the forum state.

9           On the other hand, when facts similar to ours were

10   presented, courts have found there to be no jurisdiction.  And

11   we would direct the Court's attention to the *Stair Master* case,

12   because in that case the facts were strikingly similar to the

13   facts here.  You had isolated visits by the defendant to the

14   forum state.  You have products sold through independent

15   distributors, products shipped into the forum state that

16   constituted three percent of the total sales volume, and there

17   was no general jurisdiction found there, and that case was

18   affirmed by the Federal Circuit.

19          The third type of contact were attendance at trade

20   shows.  And your Honor got it right, where these trade shows

21   aren't instances where Bel Fuse --

22          **THE COURT:**  That's an issue we deal with quite a lot

23   here, you might expect --

24          **MR. RASKIN:**  Yeah, but --

25          **THE COURT:**  -- because there are a lot of trade shows

12

1   in Nevada.

2           **MR. RASKIN:**  But this is not your typical trade show

3   where Bel Fuse has a table set up with its products and there

4   are customers from Nevada coming around looking at them.  Bel

5   Fuse attends these trade shows solely to meet with its reps and

6   distributors from across the country to go over what the past

7   year was like, to go over the goals for the next year.  They

8   rent a suite up in a hotel room and have their distributors

9   from all over the country.  Aero-Tech and Meritage do attend

10  this trade show, but it's not --

11          **THE COURT:**  Tail hook without the debauchery.

12          **MR. RASKIN:**  Yeah, exactly.

13          So, again, this isn't -- these facts --

14          **THE COURT:**  Which was a case I tried many years ago

15  here.

16          **MR. RASKIN:**  These facts do not -- are not similar to

17  the facts cited by -- are not similar to the facts of the cases

18  cited by Halo where you're actually soliciting Nevada customers

19  and soliciting sales.

20          I direct the Court's attention to the *Huffy* case,

21  which your Honor heard.

22          **THE COURT:**  Right.  Bicycles, yeah.

23          **MR. RASKIN:**  And in that case, the plaintiff even had

24  evidence of defendant's marketing of products and there was

25  still no general jurisdiction.

13

1          The last category is advertising, and for advertising

2   to amount to the continuous and systematic contact necessary

3   for general jurisdiction, the courts are clear that the

4   advertising has to be targeted at Nevada customers and

5   controlled by the defendant.

6          Here, it's undisputed that Bel Fuse itself does not

7   place any advertising, in periodicals or anywhere else, that

8   targets Nevada customers.  Their independent distributors do

9   place advertisements in the electronic source book for which

10  Bel Fuse shares in the cost, but those advertisements, first of

11  all, they shouldn't be imputed to Bel Fuse because of the lack

12  of an agency relationship.  But also, the evidence shows that

13  those advertisements aren't targeted to Nevada residents.

14          The electronic source book to which Halo refers is

15  for the Northern California region.  It does have circulation

16  in Nevada, but the one e-mail that was attached to the papers

17  said, 'We want to advertise in our target areas, including

18  Northern California.'  Nevada was not even mentioned there.

19          So, the distributor, certainly Bel Fuse isn't

20  targeting any advertising at Nevada residents, but neither is

21  the distributor.

22          And once again --

23          **THE COURT:**  Would it make a difference if the

24  distributor were?  Even though they're based in Foothills,

25  Arizona, or Santa Clara, California, would it change matters if

14

1    they were directing or focusing?

2        **MR. RASKIN:**  If the distributors said to Bel Fuse,

3    'We want to target Nevada residents with certain advertising.

4    We want you to help us pay for that'. certainly, I'd be making

5    different arguments to you today.  I might argue, well, even in

6    that case, these aren't ads actually placed by Bel Fuse.  But

7    admittedly, my argument would not be as strong as it is today

8    where the advertisements are simply not targeted at Nevada

9    residents.

10        Your Honor, this just simply isn't a case where Bel

11   Fuse has any business in Nevada.  Nevada is not where its

12   business comes from and they just don't spend any money or

13   energy targeting Nevada residents.

14        So, just to wrap things up, like your Honor said,

15   it's undisputed that Bel Fuse does not have the traditional

16   contacts with Nevada that courts typically rely upon.  There's

17   no presence here.  There are no offices, no employees; there's

18   no license to do business here nor do they have some of the

19   other contacts that are sometimes relied upon, such as direct

20   sales.

21        **THE COURT:**  If you were to prevail, can Halo bring

22   its claims that it asserts here, the patent infringement, in

23   the New Jersey action?

24        **MR. RASKIN:**  Yes.  They could bring it as a

25   counterclaim.

15

1          **THE COURT:**  They're actively in the New Jersey action

2    currently?

3          **MR. RASKIN:**  Yes, they've answered the complaint, and

4    we're just waiting to hear from the Court to set a Rule 16

5    conference in that case.

6          **THE COURT:**  But would it be in the form of a

7    counterclaim, a viable counterclaim?

8          **MR. RASKIN:**  Yes, it could be in the form of -- It's

9    the same parties.  They would counterclaim for patent

10   infringement in that case.  And in that case, no discovery has

11   been taken, and the case hasn't begun yet.

12         **THE COURT:**  All right.

13         **MR. RASKIN:**  Thank you, your Honor.

14         **THE COURT:**  All right, thank you.

15         **MR. RASKIN:**  Does your Honor want to hear anything

16   about specific jurisdiction?

17         **THE COURT:**  Go ahead.  If you want to add anything to

18   your briefs on that, I'll certainly give you the opportunity.

19         **MR. RASKIN:**  Well, no, that's all --

20         **THE COURT:**  The opportunity now with regard to

21   purposeful availment or --

22         **MR. RASKIN:**  Yeah.  I have nothing to add.  The point

23   there is that there are no sales of accused products.

24         **THE COURT:**  Yeah.

25         **MR. RASKIN:**  Halo tries to say that there were three

16

1   shipments of products that fall in the same class as accused

2   products, but under the second prong of the *Acro* (phonetic)

3   test and the Federal Circuit case law, there needs to be actual

4   infringing activity, and there's none of that alleged here.

5           Thank you, your Honor.

6           **THE COURT:**  Thank you, counsel.

7           Great.  Mr. Woodford, if you'd step up.

8           **MR. WOODFORD:**  Sure.  Good morning, your Honor.

9           **THE COURT:**  Good morning.

10          **MR. WOODFORD:**  I'll apologize first for my voice.

11   I've been a little sick, so --

12          **THE COURT:**  That's okay.  I go through that every

13   year.

14          **MR. WOODFORD:**  -- if it gets a little quiet, let me

15   know.

16          Well, I guess I'd first like to start with general

17   jurisdiction.  And really I think from what I've heard and what

18   I've read in the briefs, I think maybe it makes sense to just

19   back up a step.  I mean, obviously the standard here is

20   continuous and systematic contacts which basically means that

21   they're regular and they're characterized by order and

22   planning.  And that's exactly the type of contacts that we've

23   identified here.

24          And opposing counsel mentioned the four categories,

25   and I'm going to go through those in a bit, but it's important

17

1    to note that these are continuous contacts, and they are

2    systematic.  They're contacts by Bel Fuse or they're contacts

3    by Bel Fuse distributors and representatives that are acting on

4    behalf of Bel Fuse, pursuant to contracts.

5              **THE COURT:**  Now, with regard to Bel Fuse itself, it's

6    contact in the form of -- The annual trade show is one contact,

7    I suppose.  But what are the other direct contacts by Bel Fuse

8    in Nevada?

9              **MR. WOODFORD:**  The other direct contacts -- Well,

10   specifically --

11             **THE COURT:**  That aren't through Aero-Tech and

12   Meritage.

13             **MR. WOODFORD:**  Okay.  So Aero-Tech and Meritage are

14   the representatives.

15             **THE COURT:**  Right.

16             **MR. WOODFORD:**  The representatives going out to try

17   to garner up sales and design their products and the

18   customers'.

19             **THE COURT:**  But they are non-exclusive.  They don't

20   simply represent Bel Fuse.

21             **MR. WOODFORD:**  That is true.

22             **THE COURT:**  Okay.

23             **MR. WOODFORD:**  But to get back to the previous

24   question about the direct contacts.

25             **THE COURT:**  Yeah.

18

1          **MR. WOODFORD:**  There are direct -- The shipments that

2    we've been talking about, the 150 shipments over the course of

3    a 40-month period --

4          **THE COURT:**  Right, right.

5          **MR. WOODFORD:**  -- where only two months there hasn't

6    been a shipment, those shipments are actually to the

7    distributors' sales offices in this forum.  It's not like --

8    There's been a lot of confusion in the briefs I think, and

9    especially in reading the reply brief.

10          **THE COURT:**  Yeah, they don't go to Foothills,

11    Arizona, and Santa Clara and then get shipped separately.  They

12    come --

13          **MR. WOODFORD:**  Well, that's a separate piece of kind

14    of the big picture.  The reps go out and garner the sales, and

15    then supplying product is either through Bel Fuse itself or Bel

16    Fuse, its' distributors, supply the product.

17          **THE COURT:**  Oh, okay, okay.

18          **MR. WOODFORD:**  So the Meritage aspect and the Aero-

19    Tech aspect of these contacts doesn't really have to do with

20    the supplying of products.  Soliciting business is kind of what

21    their role is.

22          And getting back to the point about the shipments

23    directly to this forum.  It was characterized in the briefs a

24    number of different ways.  It was admittedly a little bit hard

25    for me to follow exactly what they were saying, and I heard it

1   again today, and it appears what they're saying is that these

2   are sales by distributors and we just drop ship to customers.

3           Well, all the shipments, and you can go through I

4   think it's Exhibit 2, that indicate Anexter (phonetic)

5   Brothers, that's a distributor.  Aero Electronics, that's a

6   distributor.  These are shipments by Bel Fuse to sales offices

7   in this forum.  So, those are direct shipments right into this

8   forum and as a result of the network that they set up and

9   identified this Anexter distributor and identified Aero.  So,

10  those are also direct contacts with this forum by Bel Fuse

11  itself.

12          So, I'm kind of going back to the broader picture.

13  Their response to the issues of general jurisdiction kind of

14  falls into a couple of categories.  The first thing they want

15  to do is they want to shift the focus from the contacts that

16  are actually there to talk about all the things that are not

17  present.  Well, any defendant in any case could come up with a

18  list of a million types of contacts that they don't do.

19          **THE COURT:**  Right.  We don't have officers there, et

20  cetera.  Yeah.

21          **MR. WOODFORD:**  Right.  And the list could go on and

22  on forever.  But, all that is irrelevant.  What's relevant, and

23  as I read *International Shoe*, what's relevant is: What are the

24  contacts and are they continuous and systematic?  So, we could

25  debate all day about the things they could be doing here and

20

1 don't do, but I believe those are irrelevant.

2    And then once you get past that, the next thing they

3 do is, we have these four categories of contacts.  We've kind

4 of lumped them together for the sake of just presenting the

5 evidence in a clear manner.  And what they try do is they

6 isolate each contact from each other and say, well, look at

7 this one over here.  This one isn't -- We've got cases that say

8 this one isn't sufficient.  And then let's look at this one

9 over here.  Oh, see, there's a case that says that that wasn't

10 sufficient, too.  And they do that for all four.  But what they

11 lose sight of is that it's the totality that counts.

12    So, we can talk all day about, well, there was a case

13 that said showing up at a trade show wasn't enough, but that

14 may be fine and well, but in this case that's not what's

15 happening.  We have multiple contacts when, lumped together,

16 show continuous and systematic.

17    And I'm going to just take a drink quickly because my

18 throat is --

19    **THE COURT:**  Go ahead.  No, please.

20    **MR. WOODFORD:**  I'm going to lose my voice here.

21    So, kind of with that background.

22    **THE COURT:**  So, if you add the trade show to the non-

23 exclusive, and it appears, independent activities of Aero-Tech

24 and Meritage, the other factors would be, what, that the

25 amalgam of which would make those contacts systematic and

21

1    continuous?

2         **MR. WOODFORD:**  Right.  Well, actually I was going to

3    just jump right to those.

4         **THE COURT:**  Oh, okay.  Okay.

5         **MR. WOODFORD:**  I'll go through those --

6         **THE COURT:**  Yeah.

7         **MR. WOODFORD:**  -- but just the general before I dive

8    into each one.  First you have the contacts with the

9    representatives, Aero-Tech and Meritage --

10        **THE COURT:**  Right.

11        **MR. WOODFORD:**  -- into the forum, and I'll

12   demonstrate for you.  I'll show you the factual record that

13   these are not truly independent things.  These are not these

14   guys going out and just going off and doing their own thing.

15   There is very much involvement with Bel Fuse in those contacts.

16        The second category would be shipments.  We not only

17   have shipments directly into the forum, the 150 shipments we've

18   been talking about, but we have shipments that were excluded

19   from the Bel Fuse calculation, which is another subsidiary,

20   that are directly -- we're talking 500 shipments over the

21   course of the last three or four years, I believe.

22        **THE COURT:**  Now, what was that subsidiary again?  I

23   know it's in the briefs.

24        **MR. WOODFORD:**  It's called Bel Transformer.

25        **THE COURT:**  Okay.

22

1          **MR. WOODFORD:**  And I'll address that in a second as

2    well.

3          Plus, you have the sales of distributors into the

4    forum.  So, that's the second general category.

5          The third general category is the trade shows, the

6    contacts at trade shows.  And there's an interesting issue

7    there with respect to distributors which I'll get into in a

8    second.  I don't want to, you know, I'll talk about that in a

9    second.

10         But in the fourth category would be the promotional

11   activities.  And opposing counsel has talked a lot about this

12   Yellow Book advertising with the distributors, but he failed to

13   mention the most primary and most direct form of advertising,

14   which is they give their representatives promotional materials

15   -- product overviews, samples, white paper, specifications --

16   they provide those to representatives and those representatives

17   hand deliver that stuff to customers in Nevada, and they're

18   doing it under the contract that they have with Bel Fuse.  It's

19   not that they just decide to do this themselves; the contract

20   requires it.

21         So, I'm going to jump right to the representatives

22   and talk a little bit more about the contract.

23         So, first of all, talking about how continuous are

24   these contacts and what is the nature of the actual contacts?

25   Not what they don't do or do in another forum, but what they do

23

1   here.  You have Aero-Tech, who's essentially Bill Blowes
2   (phonetic).  It is a one-man shop.
3          **THE COURT:**  Right.
4          **MR. WOODFORD:**  He has testified that he visits every
5   six weeks these customers, and makes frequent phone calls.
6   Essentially, whenever they need something, of course he's going
7   to be there.
8          Meritage is not just a one-man shop; it's several
9   individuals.  And you'll notice in the briefing, they talk a
10  lot about this man named Jeff Hinds (phonetic), and they say,
11  well, Jeff Hinds doesn't do anything in Northern Nevada.  Well,
12  the reason for that is because, as he testified, the person at
13  Meritage responsible for the Northern Nevada territory is
14  actually a woman named Susan Devalle Sarota (phonetic).  She's
15  the one who makes all the contacts.
16         So, if you get the opportunity to go through these
17  briefs again, you'll pick up on that when they're talking about
18  Hinds instead of Meritage.
19         And what Jeff Hinds testified to is that Susan has
20  personal visits one to two times a month with the Northern
21  Nevada customers and, of course, makes phone calls whenever
22  necessary.
23         Now, it's Bel Fuse's position that, well, none of
24  these activities should be attributed to them because these
25  guys are independent, they're off doing their own thing, you

24

1  know, whatever.  But, if you look at their agreement, their

2  agreement is pretty explicit what they have to do for Bel Fuse.

3  First it says they must devote their best efforts to solicit

4  sales.

5       And it's even a little more involved than that.  They

6  say that the sales efforts, they have to use all means at their

7  disposal, and that's in the agreement several times.  It says

8  they have to do personal visits, demonstrations --

9       **THE COURT:**  Now that's not just with regard to their

10  efforts to sell in Nevada, that's generally in terms of the

11  relationship between Bel Fuse and Aero-Tech and Meritage, am I

12  correct?  Any efforts that they're making?

13       **MR. WOODFORD:**  Well, it applies to all territories.

14  It applies --

15       **THE COURT:**  Right, exactly.

16       **MR. WOODFORD:**  -- equally to Nevada.

17       **THE COURT:**  Just as they might have other

18  distributors elsewhere that they would have similar agreements

19  with to --

20       **MR. WOODFORD:**  Right.

21       **THE COURT:**  -- cover Kentucky or something.

22       **MR. WOODFORD:**  Well, maybe so, but the point is, is

23  that these contacts are not just -- they're not just off doing

24  this because, oh, you know, I guess they want me to sell this;

25  maybe I'll try something today and maybe I'll go there in six

25

 1  months.  I mean, the agreement requires them to use all means

 2  at their disposal and to do these specific things, like, you

 3  know, the visits, the demonstrations, the samples, et cetera.

 4          And there was also a lot of discussion about, well,

 5  this whole independence factor.  Well, they're off doing their

 6  own thing, you know.  Bel Fuse says we shouldn't --

 7          **THE COURT:**  Well, are they not -- They are

 8  independent, are they not, Aero-Tech and Meritage, in that

 9  they, except for this agreement that they have, they also

10  perhaps have similar agreements with other distributors?

11          **MR. WOODFORD:**  They may have similar --

12          **THE COURT:**  Other manufacturers, I'm sorry, of

13  product?

14          **MR. WOODFORD:**  They may have agreements.  I haven't

15  seen them or what their agreements are with the other

16  manufacturers.  But, I mean, you can call them independent but,

17  really, it doesn't matter what label you put on it; again,

18  we've got to look at the contacts and see: What is the nature

19  of these contacts?

20          And if you look at them, when they go to visit these

21  customers in Nevada, you know, they provide the marketing

22  materials that Bel Fuse gives them, they show them samples, and

23  then they do what they call 'an attempt to design-in' the

24  product, meaning they sit down and say, 'Well, here's some Bel

25  Fuse products that would work well in your product.  What can

1    we do to get you to use these products?'

2            And what happens at that point is Bel Fuse steps in

3    and works closely.  That's exactly what was in the testimony of

4    Bill Blowes, for example.

5            **THE COURT:**  Yeah.

6            **MR. WOODFORD:**  Works closely with them, providing

7    specifications, working with any technical issues that come up

8    to get this product design into that customer's product.  Then,

9    when the customer says, 'Okay, your product looks good.  How

10   much is it going to be?', well, what the representative has to

11   do is contact Bel Fuse and say, 'What price can I give?',

12   because he can't make the quotations himself.  He has to work

13   with Bel Fuse.

14           And, for example, in the testimony of Bill Blowes, he

15   identified eight specific examples that he could recall in

16   Nevada where a gentleman named Chris Fadoh (phonetic), who's

17   the regional sales manager for Bel Fuse, where he worked hand

18   in hand with him to get this product design in.  Now, largely

19   unsuccessful at that, which we can get to in terms of the sales

20   and some of the other issues, but those are still contacts.

21   Regardless of whether they turn into a sale, those are still

22   contacts, they still count, and those are contacts that Bel

23   Fuse has a large hand in and should certainly be considered.

24           And there was a brief mention of the fact that, or

25   the allegation I guess, that we haven't cited case law that

27

1    shows that independent representatives can satisfy the -- that

2    that alone can satisfy general jurisdiction.  Well, there

3    actually are cases that say that, and we've cited them, but to

4    my point earlier, it's the totality we're looking at here.  So,

5    even if you can find a couple of cases that say, well, that

6    wasn't enough, you know, that court decided, that's not the end

7    of the story.  We're looking at the totality.

8              But, to kind of follow up on what counsel said, the

9    *Newman* case, *Newco* (phonetic) *Manufacturing*, and *Fanomation*

10   (phonetic); those cases are all where they found that the

11   independent sales representatives, those activities were

12   sufficient.

13             So now I'd like to turn to the Nevada sales and

14   shipments.  So, Bel Fuse has admitted, and they put this in in

15   their initial motion, that there were 150 shipments from

16   January 2004 to April 2006.

17             **THE COURT:**  Right.

18             **MR. WOODFORD:**  Right.  Those are -- They've

19   acknowledged those; those are in the record.  Now we've had the

20   debate about, okay, what is the nature of those shipments in

21   terms of, well, are they drop shipments?  What exactly are

22   they?  And I tried to clear up the record a little bit before,

23   and essentially, as I said, those are shipments to distributors

24   in Las Vegas.  And you can actually -- The evidence, we have

25   evidence in the record, obviously, that shows this.  It's

28

1   Exhibit 8.  There's a spread sheet where you can go through and

2   track where these shipments went to.

3          In Exhibit 13, for example, with respect to Anexter,

4   which is where the majority of those shipments come from, I

5   have an invoice that shows where they shipped it to, and I have

6   a print off from their web page that shows that they have a

7   sales and warehouse that matches that shipping address.  So,

8   it's not going to some end user; it's going to a distributor.

9          Now, we have the issue of Bel Transformer which I

10  brought up earlier.  Bel Transformer does a lot of business in

11  this forum.  From March 2003 to April 2007, they've got 500

12  shipments coming into Nevada.  So, really the issue is: Why did

13  Bel Fuse include Bel Connector -- who, by the way, all those

14  shipments to Anexter, that's Bel Connector, a subsidiary -- but

15  not include Bel Transformer?  Well, it appears to me that the

16  reason is obvious, because those 500 shipments are not a good

17  fact to have in the record.

18         So, what they've tried to do is make some distinction

19  between the two.

20         Well, during discovery, I learned exactly how these

21  subsidiaries operate with respect to Bel Fuse.  Neither one has

22  a CEO; neither one has a board.  The CEO of Bel Fuse runs both

23  of them, and the vice president of operations.  All decisions

24  regarding capital expenditures, hiring, salaries, bonuses; all

25  done by Bel Fuse.  What these companies have is just a general

29

1    manager.

2         So, if we look at the alter-ego law, which is it

3    necessary to get this far to even include these sales by Bel

4    Transformer?  I don't think so.  I think the sales by Bel Fuse

5    are enough.  But, if you wanted to go into the alter-ego law,

6    you have a case on this that I think was cited, and you cite

7    sort of a main case that's followed in this District.  And the

8    standard is: Does Bel Fuse control the internal affairs of the

9    subsidiaries?  And I would say they do for the reasons I just

10   said; for the reasons of capital expenditures, hiring, bonuses.

11   That's controlling the internal affairs.

12        And there's another characterization in the case law

13   on whether it influences and governs a subsidiary.  And here

14   again, no board, no CEO; they're governed by the CEO and vice

15   president of Bel Fuse.  So, I would say that the alter-ego law

16   is satisfied, and these shipments should also be considered.

17        Now I'll turn to distributors for a second.  We have

18   distributor shipments, reports that the distributors provide

19   Bel Fuse that we have had access to through discovery that show

20   there's been 180 shipments from the five previous quarters.

21   And since 2000, there have been well over 200.

22        Now, there's case law that says this *Fanomation* case

23   and a case that we've cited called *The AM* case, that said you

24   can't shield yourself from general jurisdiction by saying, oh,

25   it goes through distributors.  Those courts have found that.

1         But, and one of the points I wanted to make earlier

2   about how this relationship with distributors is fairly

3   interesting is that in some sense they say, well, okay, our

4   distributor, they're not part of us.  You can't consider their

5   activities as counting toward the activities of Bel Fuse

6   because they're not an agent.  They're kind of independent,

7   they're doing their own thing.  Well, that's interesting

8   because if that's the case, then really what they are is,

9   they're a customer.  They're a customer of Bel Fuse.

10        But then when we turn to the trade show and we talk

11  about these meetings with all these distributors and all these

12  things going on here, they say, well, oh, we don't have any

13  discussions with our customers.  Well, they're trying to have

14  it both ways.  Either distributors' actions count toward you,

15  they are agents, or, if they're not and they're truly

16  independent, then what you're doing in Las Vegas and when

17  you're shipping these products into Las Vegas, you're shipping

18  them to your customers.  So, either way, you can't have it both

19  ways.  The contacts count in one way or the other.

20        And just a word on the -- There was a lot of mention

21  in the brief and especially in their opening papers about a

22  percentage of sales.  You know, these 150 shipments, not

23  including the Bel Transformer shipments or distributor --

24        **THE COURT:**  Right.

25        **MR. WOODFORD:**  -- but they only make up some --

31

| | |
|---|---|
| 1 | **THE COURT:**  Point three or something? |
| 2 | **MR. WOODFORD:**  Something like that. |

3      Well, of course -- There's case law that says of

4  course that's not outcome determinative, you know, and there

5  are cases that have said, oh, that's a low amount of sales;

6  that's not sufficient.  Again, we have to focus on the totality

7  of the circumstances here.  In a lot of those cases, those were

8  the only contacts.

9      But the other thing that you lose sight of when you

10  focus just on sales is the continuous and systematic; that's

11  the nature of the sales.  And when you simply focus on a

12  percentage of sales, you'll get some weird results.  Say for

13  example, Halo, which is probably -- Bel Fuse has 50 times as

14  much revenue as Halo does.  They could have the same contacts

15  in this forum; all the same, nothing different, but because Bel

16  Fuse is bigger, general jurisdiction wouldn't apply, but it

17  could apply to Halo because they're smaller because that

18  percentage of sales would be -- of course would be much larger

19  for Halo.

20      So, it defies common sense to solely look at the

21  percentage of sales.  You've got to look at, again, the nature

22  of the contacts and are they continuous and are they

23  systematic.

24      And just a few words on the trade shows.  I already

25  talked about the dichotomy with the distributors, but the other

32

1    things I'd just like to talk about is that this trade show is

2    really kind of an annual meeting with -- You know, it's not

3    like you just go show up and hear about -- Well, as many of the

4    trade shows are here, just kind of what's going on in the

5    industry or what's going on.

6            **THE COURT:**  Right.

7            **MR. WOODFORD:**  No, these are --

8            **THE COURT:**  No, these are hourly meetings that --

9            **MR. WOODFORD:**  Right.  These are --

10           **THE COURT:**  Or one-hour meetings I should say that

11   take place.

12           **MR. WOODFORD:**  Right, and they're specific to their

13   business.  You know, they're not here to talk about what's new

14   in the world in Asian manufacturing or whatever.

15           **THE COURT:**  Maybe all of that, I don't know, but it's

16   certainly clear that it includes these meetings.

17           **MR. WOODFORD:**  Right.  And of course Bel Fuse, their

18   CEO, director of sales, regional sales managers, the top

19   hitters from the company are all here.

20           **THE COURT:**  Right.

21           **MR. WOODFORD:**  These are important meetings.  They

22   say all the distributors show up and about 75 percent of

23   representatives. That's in the record; that's what the regional

24   sales manager who testified, testified to during his

25   deposition.  And what they do is, they review past sales,

33

1  future sales strategies, new products.  And I think Bel Fuse in

2  its brief admits that they discuss target customers and new

3  product offerings.

4         Well, again, if distributors aren't agents and

5  they're not part of your -- you know, they can't be counted

6  toward you, then what you're doing is you're using Las Vegas to

7  go and show them all your new products and solicit sales.  I

8  mean, that's what you're doing.  You're saying, hey, we've got

9  this new product.  Please push this line.  I mean, that's a

10 significant contact in this forum.

11        And finally, the promotional issues, I touched on

12 some of it earlier.  Examples of the materials that are

13 provided to representatives -- product overviews, marketing

14 brochures, catalogues, samples, specifications, white papers --

15 these are all provided by Bel Fuse to the representatives.  The

16 representatives, at the direction of Bel Fuse, under their

17 contract, go and meet and have personal visits with the

18 customers.  It says it right in their contract.  They provide

19 these materials to solicit business, using all means at their

20 disposal.  So, it's not like they're just out there doing this

21 on their own.  I mean, they're doing it at the direction of Bel

22 Fuse.

23        And just a word on the advertising promotional fund.

24 The distributor agreements that Bel Fuse -- well, that Bel Fuse

25 has with its' distributors, these agreements set up what's

34

1   called an advertising and sales promotion fund.  And what they

2   do is something like a percentage of their business they will

3   apply or give them a credit and say, you can go out and we'll

4   pay for advertising on our behalf, but we're not going to pay

5   for it unless you show it to us first and we approve it.

6        So again, it's not like the distributors are out

7   doing this and just saying, oh, okay, we'll put some

8   advertising in for Bel Fuse.  No, they're saying, no, Bel Fuse,

9   you're going to pay for it, and here it is.  Do you approve it?

10  Yes.  Okay, we'll run the ad on your behalf.

11       So again, this is not something that's fortuitous and

12  is just happening.  This is Bel Fuse controlling and directing

13  these activities.

14       And just one last point on the promotion.  You'll

15  notice in the brief again there's a lot of case law about,

16  well, promotional loan hasn't been found to satisfy general

17  jurisdiction.  Again, the point here is that it's the totality

18  and not simply just a promotion that we're relying on to show

19  general jurisdiction in this case.

20       **THE COURT:**  Let me jump for a moment --

21       **MR. WOODFORD:**  Sure.

22       **THE COURT:**  -- to specific jurisdiction.  Do you

23  agree that the accused product, the package, was it

24  Transformer?  I forget what it's characterized as, but the

25  package that is the accused object in this case; it is not or

35

1   has it not, apparently, been sold in Nevada, am I correct?

2          MR. WOODFORD:  Well, I think I have to clarify two

3   points there.

4          THE COURT:  Okay.

5          MR. WOODFORD:  The first is the accused product kind

6   of dispute that's going on here and the infringing acts in the

7   forum.  I think those are the two points, and I'll address --

8          THE COURT:  Well, what I think is: Absent that, your

9   alternative would be specific jurisdiction.  And you're

10  arguing, of course, take the amalgam of factors together, put

11  them in total, not just isolated.

12         MR. WOODFORD:  Right.

13         THE COURT:  And we have continuous and systematic

14  activity which confers general jurisdiction over Bel Fuse.  Are

15  you arguing alternatively then that, even absent that, that

16  there is specific jurisdiction here?

17         MR. WOODFORD:  Yes.

18         THE COURT:  Okay.

19         MR. WOODFORD:  And I'll explain that because I think

20  it's now become unclear as to exactly what the issue is.  From

21  the briefing, it was hard to follow.

22         First, as to the issue of the accused product.  So,

23  in our complaint we have identified surface-mount transformers

24  as the products that are at issue here.

25         THE COURT:  Right.

36

1          **MR. WOODFORD:**  And of course, there are hundreds and

2    hundreds of surface-mount transformers that are sold by Bel

3    Fuse and even our client.  I mean, that's just the nature of

4    how these things are sold.  We have obtained samples of course

5    and studied several of these, but of course we haven't had the

6    ability to do all hundred.  You have to buy them in lots of

7    hundreds or thousands, and we can't -- you know, that's a time

8    consuming --

9          **THE COURT:**  Pretty expensive.

10         **MR. WOODFORD:**  - and expensive process when all we

11   need to do to bring suit is find a few that infringe, and we've

12   done that, and we've actually even disclosed the part numbers

13   that we're relying on.

14         We have not had the opportunity to obtain samples of

15   the products that were shipped out of Nevada that are at issue

16   here.

17         **THE COURT:**  All right.

18         **MR. WOODFORD:**  So, while they are accused and they

19   certainly are going to be the subject of discovery, I can't

20   stand here right now and say that I can certify one hundred

21   percent that we say they infringe because I haven't seen a

22   picture.

23         Now what's interesting is that Bel Fuse could have

24   easily provided a picture of these products and said, 'See,

25   they don't infringe.  They're not even in the class of --

37

1    They're not the type at issue here', because of course the

2    products at issue here have an open bottom.  I don't know if

3    you recall from the previous briefing, but that's just

4    generally the nature of the product.  They could provide a

5    picture and prove instantaneously that, okay, this is not

6    something that's even relevant to this suit.  They didn't do

7    that.

8            Instead, they said, 'Well, you haven't actually

9    identified that product, in the couple that we identified as

10   part of our complaint, as something that infringes.'  Well, if

11   it didn't, then it would have been easy to just end the whole

12   matter.  If they could come in and say, 'Listen, here's a

13   picture of this product and it doesn't infringe', then I would

14   probably have to back off and say, okay, if that's the case,

15   then you can show that.  But they haven't done that.  That

16   would have been very easy.

17           And of course the standard here is all factual

18   disputes must be resolved in favor of Halo Electronics.

19           Hopefully that clears up the issue of the accused

20   products.

21           **THE COURT:**  All right.  Yeah.

22           **MR. WOODFORD:**  Now, in terms of the infringing acts

23   in the forum.  We have evidence in the record that these

24   products were in the Reno warehouse of Aero Electronics.  And

25   Aero Electronics, of course, is a distributor of Bel Fuse, and

38

1    they have an agreement with Bel Fuse, and these products were

2    shipped, or sold, out of this Reno warehouse, and that's in the

3    record.

4          So we have two possible scenarios here.  And again,

5    it depends on: Is the distributor part of Bel Fuse, or are they

6    separate?  So, if they're separate and they're actually a

7    customer, well then you've sold the products into the forum.

8          **THE COURT:**  Right.

9          **MR. WOODFORD:**  Your customer has them; here they are.

10         If the distributor is actually part of Bel Fuse, then

11   what you have is, well, Bel Fuse, you've sold them from this

12   forum.  So, either way, you can tie a sale to this forum, and

13   that's one of the complaints that they had in their reply

14   brief, and I think that addresses that issue.

15         **THE COURT:**  All right.  All right.

16         I asked counsel for Bel Fuse about the New Jersey

17   action.  Is he correct that in the event the motion to dismiss

18   in this forum were granted, is there any barrier to Halo

19   bringing the claims that are now present in Nevada in the New

20   Jersey action as a counterclaim?  Is that an option?

21         **MR. WOODFORD:**  I don't think there's any legal

22   barrier, meaning that's where their headquarters is.  We --

23         **THE COURT:**  And what about Mr. Prior's client, Pulse

24   Engineering?  They're not movants in this case and earlier, and

25   I haven't pulled up another -- I don't have it in front of me.

39

```
 1   I wish I had downloaded a doggone copy of the amended

 2   complaint, but what's the status as between the claims against

 3   Halo and Pulse?

 4            MR. WOODFORD:   That's a very good question.   And the

 5   status is: We've put in our amended complaint.   They've

 6   answered and actually counterclaim.   So, no matter how you look

 7   at it, we have a case here.   We're going forward on the patents

 8   at issue with respect to Bel Fuse in the matter against Pulse

 9   and Technetrol (phonetic), and they have added additional

10   patents here.

11            THE COURT:   And is Pulse in the New Jersey action as

12   well?

13            MR. WOODFORD:   No, Pulse is not in the New Jersey

14   action.

15            THE COURT:   Okay.

16            MR. WOODFORD:   And just another word on the New

17   Jersey action.   We filed this complaint here because our

18   client's headquarters is here.

19            THE COURT:   On, no, I understand why you filed in

20   Nevada.

21            MR. WOODFORD:   Right.   I mean, in the end -- And our

22   client also has a sales office in California as well.   So, in

23   the event that the Court should --

24            THE COURT:   I'm just trying to put the entire thing,

25   just as we were talking about, in context in terms of
```

40

```
 1    jurisdictional activity.  I'm trying to get a grasp overall on

 2    the actions that are somewhat related here, although I guess --

 3              MR. WOODFORD:  Right.

 4              THE COURT:  -- only loosely.  Okay.

 5              All right, thank you very much, Mr. Woodford.

 6    Appreciate it.

 7              Any reply that you would like to provide -- It's Mr.

 8    Raskin, right?

 9              MR. RASKIN:  Yes, Josh Raskin.  Yeah, I'll try to be

10    very brief.  I just wanted to address the totality of contacts

11    argument.

12              I think the best way to put this is that if the

13    contacts that are alleged to exist here relate to the accused

14    products, I think the totality of contacts argument would work

15    for specific jurisdiction.  But, when we talk about these

16    contacts, for example, Mr. Woodford says that it's not Mr.

17    Hinds that visits, it's this woman Susan that visits.  But when

18    you look at what she does, she visits here for 11 other

19    products besides Bel Fuse products and not even for the accused

20    products.

21              If she were coming to Nevada on behalf of Bel Fuse,

22    trying to sell the accused products and actually selling the

23    accused products, then there would be jurisdiction here because

24    the cause of action would relate to those contacts.

25              THE COURT:  But are we separating specific from just
```

41

1    general jurisdiction?  In other words, as I understood Mr.

2    Woodford's argument, Judge, don't just look at trade show or

3    don't just look at the relationship with Aero-Tech and Meritage

4    in isolation.

5            **MR. RASKIN:**  Yeah.

6            **THE COURT:**  Put them all together, and the totality

7    of those activities demonstrates the continuous and systematic

8    contacts --

9            **MR. RASKIN:**  That's right.

10           **THE COURT:**  -- that would make an exercise of general

11   jurisdiction possible.

12           **MR. RASKIN:**  And one way to respond to that would be

13   that the cases that were cited here of course don't involve

14   only a single contact.  For example, the cases that were cited

15   for the representatives involved all these types of contacts,

16   and the best example is the *Congoleum* case where the Ninth

17   Circuit affirmed a dismissal for lack of personal jurisdiction.

18   And in that case, the facts were identical to this case.

19           In that case, and I'm reading from it, 'The

20   activities, there were independent consultants to help the

21   defendant develop a United States market.  The activities of

22   these consultants in California, the forum state, consisted of

23   the solicitation of orders, the recommendation of other sales

24   agents, the ordering of samples, the promotion of products to

25   potential customers through mail and show room display in

42

1   California, attendance at trade shows and sales meetings.'

2        Then the Court was clear to point out that neither of

3   these representatives had the authority to bind the defendant,

4   and the defendant retained the right to accept or reject

5   business generated by them, and the representative also

6   represents manufacturers other than the defendant and displays

7   the merchandise of all of its clients in the show room.

8        And what the Court, the Ninth Circuit found is that:

9   'No court has ever held that the maintenance of even a

10  substantial sales force within a state is sufficient contact to

11  assert jurisdiction in an unrelated cause of action.'

12       So, in that case the Ninth Circuit did consider this

13  amalgam of the same contacts; trade shows, sales reps,

14  advertisements.  In that case, the reps were handing out the

15  catalogues.  In fact, they had a show room where they showed

16  the products.  But, the important thing to note was that they

17  weren't the accused products.

18       **THE COURT:**  To save me some time, what page were you

19  reading from in that case?

20       **MR. RASKIN:**  That was the *Congoleum* case, which is

21  729 F.2d 1240, and I was reading from, oh, let me find the page

22  number here.

23       **THE COURT:**  Oh well, that's all right if it's --

24       **MR. RASKIN:**  It's a very short case.  Unfortunately I

25  don't -- This doesn't --

43

```
1              THE COURT:  That's okay.

2              MR. RASKIN:  But it's at 1240.  It's on the first

3    page of the case.

4              THE COURT:  All right.

5              MR. RASKIN:  And most of these cases, the *Fisher*

6    case, the *Berzer* (phonetic) case, the *Chatterbox* case, those

7    cases all involve situations where you had the manufacturers'

8    reps and the manufacturers' reps were also handing out the

9    catalogues, as Halo alleges.  There were also trade shows,

10   there were also sales.  Of course there were sales by these

11   reps of products to customers in the forum state.

12             THE COURT:  How do you respond to the argument about

13   the agreement that's signed as between Bel Fuse and Aero-Tech

14   and Meritage, the efforts they would make?

15             MR. RASKIN:  My response to that is that that

16   agreement expressly states that they're non-exclusive; that Bel

17   Fuse retains the right to accept or reject the sales.  That

18   agreement I think supports our position because it shows that

19   these agents do not receive a salary, they're not employees of

20   Bel Fuse.

21             And your Honor is right.  I don't know this to be a

22   fact, but I think it's likely to assume that they have similar

23   agreements --

24             THE COURT:  I expect they probably do.

25             MR. RASKIN:  -- with 11 other companies.
```

44

1          In any event, your Honor, the obligations in those

2   agreements, as testified to by the reps themselves, really are

3   for territories outside of Nevada.  I mean, these really are

4   Northern California and Arizona reps; they're not Nevada reps.

5          Again, I think that the answer in this case would

6   turn drastically if these reps were residing in Nevada.

7          **THE COURT:**  As I examine these amalgam of factors, is

8   Mr. Woodford correct; I should consider not only Bel Fuse but

9   Bel Transformer?

10          **MR. RASKIN:**  Okay.

11          **THE COURT:**  I mean, are these in fact the alter-egos

12   of --

13          **MR. RASKIN:**  Yeah.

14          **THE COURT:**  -- Bel Fuse, Inc.?

15          **MR. RASKIN:**  I'll address that.  No.  Signal

16   Transformer, and they referred to them as Bel Transformer.

17   It's really Signal Transformer -- is not the alter-ego of Bel

18   Fuse.  The testimony shows that Signal Transformer is

19   responsible for operating its own day to day activities.  It

20   has a general manager, and that general manager is responsible

21   for its own day to day activities.

22          **THE COURT:**  But Bel Fuse does in fact set the

23   salaries, hires and fires, basically?

24          **MR. RASKIN:**  But that's okay; that's okay under the

25   law.

45

1          And your Honor, the facts of this case are almost

2     identical to the *Pat Clark Sports* case that your Honor -- where

3     your Honor decided that a subsidiary having the same exact

4     relationship with its parent was not the alter-ego and

5     therefore its actions did not inure to the parent for purposes

6     of general jurisdiction.

7          Signal Transformer was a separate company that our

8     client acquired, and now it continues to run the same way it

9     was running before our client acquired it.  Yes, our client

10    does have to approve capital expenditures and things like that,

11    like any parent would do for a subsidiary, but the question for

12    the alter-ego issue is whether it runs its own day to day

13    activities, and the testimony -- the deposition testimony

14    establishes that it does.

15         Mr. Woodford said that we can't have it both ways;

16    that if the distributors truly are independent, then in fact

17    they're our customers.  And that's right, they are our

18    customers.  But then what he says is that if they are our

19    customers, then when we meet with them at the trade shows,

20    we're actually making sales to customers.  But that's not true.

21         At the trade shows, we're not taking orders.  We're

22    not sitting there soliciting sales to our distributors.  And

23    even if we were, those distributors aren't Nevada residents.

24    So, even if we were soliciting sales of customers, those

25    customers reside outside of Nevada, so, the cases, the trade

46

 1  show cases, would not apply to those facts.  But, in any event,

 2  we're not soliciting sales.

 3          Now lastly I just want to once again go back to

 4  specific jurisdiction.  Mr. Woodford was not able to inform

 5  your Honor that they do have any evidence that we sell accused

 6  products into Nevada, and he says the reason for that is that

 7  there are so many that they haven't had the opportunity.  But

 8  the point there is that it's the plaintiff's burden to prove

 9  jurisdiction.

10          **THE COURT:**  Correct.

11          **MR. RASKIN:**  It's not our burden to show them that we

12  don't infringe.  We don't believe we infringe at all, but it's

13  their burden, before they bring a lawsuit against an out of

14  state company, to be able to support jurisdiction.  And if they

15  can't do it, that's not the fault of Bel Fuse.

16          Then they refer to, quote, 'these products being

17  shipped out of a warehouse and therefore there must be some

18  sort of act.'  But again, these products that he refers to have

19  not been shown to be accused products.

20          When your Honor ordered Halo to amend their complaint

21  to identify the products that infringe --

22          **THE COURT:**  Right.

23          **MR. RASKIN:**  -- at the time that they did that, they

24  had already completed the jurisdictional discovery, and they

25  had all of Bel Fuse's sales, and they could have chosen one of

47

1    the models that Bel Fuse did sell into Nevada, but they chose

2    one that they didn't, and that just shows that they can't meet

3    their burden.

4            **THE COURT:**  All right.  Thank you, Mr. Raskin.

5            **MR. RASKIN:**  Thank you, your Honor.

6            **THE COURT:**  Mr. Prior, I didn't want to cut you off.

7    I don't think you have a position, but I'm not sure.  On behalf

8    of Pulse Engineering, anything that you have to add on behalf

9    of Pulse Engineering at today's hearing?

10           **MR. PRIOR:**  Nothing to add today.

11           **THE COURT:**  Great.  Thanks very much.

12           Well, counsel, thank you.  Your arguments are very

13   helpful as oftentimes the issues of jurisdiction are good

14   questions, and they are so fact-specific.  They really do turn

15   on the facts.

16           And much as I'd like to rule from the bench, I want

17   to go back and review the record again in light of your

18   arguments.  I will endeavor to have a ruling for you as quickly

19   as I can, sometime next week certainly.  I should be able to do

20   that since the trial I had set for Monday is now gone off, so

21   that makes for a little more time for me.

22           So, thanks for your arguments.  Have a safe trip.

23           **MS. NACHT:**  Your Honor.

24           **THE COURT:**  Yes.

25           **MS. NACHT:**  I have a procedural question.

48

1          THE COURT:  Yes.

2          MS. NACHT:  My name is Lori Nacht.  I'm with Harmon

3     and Davies.  We're local counsel for the plaintiff.

4          THE COURT:  Yes.

5          MS. NACHT:  I wanted to know if you require us to be

6     here at all the hearings or if we can be excused.

7          THE COURT:  No.  Thanks for raising that, and I'm

8     glad you did.  I don't.  Now, there may be certain cases where

9     I have, but for the most part, no.  That's an extra expense

10    that I hate to see the parties have to go to.

11         MS. NACHT:  Okay.

12         THE COURT:  So, you're welcome always, and that

13    raises another good point because we do require local counsel.

14    We're not just looking for mail drops, obviously.  We want

15    people who can be ready to step in where necessary and

16    substantively deal with the case.  But, when we're at hearings

17    such as this that are substantive, or even trial, I wouldn't

18    require local counsel for any of the parties to be present.

19         MS. NACHT:  Okay.

20         THE COURT:  All right.

21         MS. NACHT:  Thank you.

22         THE COURT:  Great.  Thanks very much.

23         All right, we'll take a short break.

24    **(This proceeding was adjourned at 9:54 a.m.)**

25

<u>**CERTIFICATION**</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          ___December 13, 2007___


*TONI HUDSON*


<u>**FEDERALLY-APPROVED TRANSCRIBER**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION


HALO ELECTRONICS, INC.          )
                                )   CASE NO:  2:07-CV-331-PMP-PAL
               Plaintiff,       )
                                )              CIVIL
     vs.                        )
                                )         Las Vegas, Nevada
BEL FUSE, INC., ET AL.,         )
                                )      Friday, November 30, 2007
               Defendants.      )      (8:58 a.m. to 9:54 a.m.)


MOTION HEARING




BEFORE THE HONORABLE PHILIP M. PRO,
UNITED STATES DISTRICT JUDGE




Court Recorder: Erin Smith

EXCEPTIONAL REPORTING SERVICES, INC.
14493 S. PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418
361-949-2988

# EXHIBIT D

Gary L. Koenigsberg
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
Attorneys for Plaintiff,
Bel Fuse, Inc.

Joshua L. Raskin
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
250 Park Avenue
New York, NY 10017
(212) 986-1116
Attorneys for Plaintiff,
Bel Fuse, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEL FUSE, INC. | CIVIL ACTION NO. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| HALO ELECTRONICS, INC. | |
| Defendant. | |

Plaintiff, Bel Fuse, Inc., by and through its undersigned counsel, for its Complaint against

defendant, Halo Electronics Inc., alleges the following upon information and belief, except as to

those allegations concerning Bel Fuse, Inc., which are alleged upon knowledge.

## THE PARTIES

1.    Plaintiff Bel Fuse, Inc. ("plaintiff" or "Bel Fuse") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 206 Van Vorst Street, Jersey City, New Jersey.

2.    Defendant Halo Electronics, Inc. ("defendant" or "Halo") is a corporation organized and existing under the laws of the state of Nevada with its principal place of business at 1861 Landings Drive, Mountain View, California.

## JURISDICTION AND VENUE

3.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*. This Court has jurisdiction over the subject matter of the claim asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338.

4.    This Court has personal jurisdiction over Halo because Halo is doing business within this State and judicial district, transacts business within this State and judicial district, has sold and is selling allegedly infringing products into this State and judicial district, derives substantial revenue from intra-state commerce and is otherwise within the jurisdiction of this Court.

5.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district, Halo may be found in this judicial district, and Halo is subject to personal jurisdiction in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. § 1400(b).

## COUNT I
### (Patent Infringement)

6.    Bel Fuse restates and realleges the preceding paragraphs of this Complaint.

7.     This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et.
seq.*, including 35 U.S.C. § 271, and is for willful patent infringement.

8.     On April 7, 1998, U.S. Patent No. 5,736,910 ("the '910 patent") was duly and
legally issued by the United States Patent and Trademark Office.  A true and correct copy of the
'910 patent is attached hereto as Exhibit A.

9.     Bel Fuse is the assignee of all rights, title, and interest in and to the '910 patent
and possesses all rights of recovery under the '910 patent.

10.    Halo has been and is infringing, actively inducing others to infringe, and/or
contributing to the infringement of the '910 patent.

11.    As a direct and proximate result of Halo's acts of infringement, Bel Fuse has
suffered damages and is entitled to recover an amount adequate to compensate for the
infringement under 35 U.S.C. § 284, which amount is to be determined at trial.

12.    Halo has had, at all relevant times, actual and constructive notice that its conduct
infringed on the claims of the '910 patent but nevertheless continued its infringing conduct.
Halo's infringement has been, and continues to be, willful and, therefore, Bel Fuse is entitled to
treble damages under 35 U.S.C. § 284.

13.    This is an exceptional case under 35 U.S.C. § 285 which entitles Bel Fuse  to an
award of reasonable attorneys' fees.

14.    Halo will continue infringing the '910 patent unless enjoined from further
infringement by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Bel Fuse prays for judgment and relief as follows:

A.    A judgment that Halo has infringed and continues to infringe claims of the '910 patent;

B.    An order, pursuant to 35 U.S.C. § 283, permanently enjoining and restraining Halo and its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with each of the foregoing, from infringing – and from contributing to and/or inducing the infringement of – any claims of the '910 patent;

C.    An order, pursuant to 35 U.S.C. § 284, that Halo account to Bel Fuse for an amount adequate to compensate Bel Fuse for damages sustained from Halo's infringing acts, which amount is to be determined, and that said amount be trebled pursuant to 35 U.S.C. § 284;

D.    An order, pursuant to 35 U.S.C. § 285, that Halo pay Bel Fuse its reasonable attorneys' fees in connection with this action;

E.    A judgment that costs of this action be awarded to Bel Fuse;

F.    An order that Halo pay Bel Fuse prejudgment and post-judgment interest at the highest statutory rate on Bel Fuse's damages, costs and attorneys' fees; and

G.    An order awarding Bel Fuse such other and further relief as may be deemed by this Court to be just and proper.

## JURY DEMAND

Bel Fuse hereby demands trial by jury on all issues so triable.

WOLF BLOCK SCHORR AND
SOLIS-COHEN, LLP

By: _____
Gary L. Koenigsberg
101 Eisenhower Parkway
Roseland, NJ  07068

Joshua L. Raskin
250 Park Avenue
New York, NY 10017

Attorneys for Plaintiff
Bel Fuse, Inc.

Dated: May 8, 2007

# EXHIBIT  E

Gary L. Koenigsberg
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
101 Eisenhower Parkway
Roseland, NJ  07068
(973) 228-5700
Attorneys for Plaintiff,
Bel Fuse, Inc.

Joshua L. Raskin
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
250 Park Avenue
New York, NY 10017
(212) 986-1116
Attorneys for Plaintiff,
Bel Fuse, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BEL FUSE, INC. | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 2:07-cv-02168-HAA-ES |
| | : | |
| v. | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| HALO ELECTRONICS, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

Plaintiff, Bel Fuse, Inc., by and through its undersigned counsel, for its First Amended

Complaint against defendant, Halo Electronics Inc., alleges the following upon information and

belief, except as to those allegations concerning Bel Fuse, Inc., which are alleged upon

knowledge.

## THE PARTIES

1.      Plaintiff Bel Fuse, Inc. ("plaintiff" or "Bel Fuse") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 206 Van Vorst Street, Jersey City, New Jersey.

2.      Defendant Halo Electronics, Inc. ("defendant" or "Halo") is a corporation organized and existing under the laws of the state of Nevada with its principal place of business at 1861 Landings Drive, Mountain View, California.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*.  This Court has jurisdiction over the subject matter of the claim asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This Court has personal jurisdiction over Halo because Halo is doing business within this State and judicial district, transacts business within this State and judicial district, has sold and is selling allegedly infringing products into this State and judicial district, derives substantial revenue from intra-state commerce and is otherwise within the jurisdiction of this Court.

5.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district, Halo may be found in this judicial district, and Halo is subject to personal jurisdiction in this judicial district.  Venue is also proper in this judicial district under 28 U.S.C. § 1400(b).

## COUNT I
### (Patent Infringement)

6.      Bel Fuse restates and realleges the preceding paragraphs of this Complaint.

7.    This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*, including 35 U.S.C. § 271, and is for willful patent infringement.

8.    On April 7, 1998, U.S. Patent No. 5,736,910 ("the '910 patent") entitled, "Modular Jack Connector With A Flexible Laminate Capacitor Mounted On A Circuit Board," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '910 patent is attached hereto as Exhibit A.

9.    Bel Fuse is the assignee of all rights, title, and interest in and to the '910 patent and possesses all rights of recovery under the '910 patent.

10.    Halo has been and is infringing, actively inducing others to infringe, and/or contributing to the infringement of the '910 patent by, directly and/or through intermediaries, making, using, selling, offering for sale and/or importing products in the United States and this judicial district that are covered by one or more claims of the '910 patent, including but not limited to, Halo's FastJacks Integrated RJ-45 Connectors.

11.    As a direct and proximate result of Halo's acts of infringement, Bel Fuse has suffered damages and is entitled to recover an amount adequate to compensate for the infringement under 35 U.S.C. § 284, which amount is to be determined at trial.

12.    Halo has had, at all relevant times, actual and constructive notice that its conduct infringed on the claims of the '910 patent but nevertheless continued its infringing conduct. Halo's infringement has been, and continues to be, willful and, therefore, Bel Fuse is entitled to treble damages under 35 U.S.C. § 284.

13.    This is an exceptional case under 35 U.S.C. § 285 which entitles Bel Fuse to an award of reasonable attorneys' fees.

14.    Halo will continue infringing the '910 patent unless enjoined from further infringement by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Bel Fuse prays for judgment and relief as follows:

A.    A judgment that Halo has infringed and continues to infringe claims of the '910 patent;

B.    An order, pursuant to 35 U.S.C. § 283, permanently enjoining and restraining Halo and its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with each of the foregoing, from infringing, and from contributing to and/or inducing the infringement of, any claims of the '910 patent;

C.    An order, pursuant to 35 U.S.C. § 284, that Halo account to Bel Fuse for an amount adequate to compensate Bel Fuse for damages sustained from Halo's infringing acts, which amount is to be determined, and that said amount be trebled pursuant to 35 U.S.C. § 284;

D.    An order, pursuant to 35 U.S.C. § 285, that Halo pay Bel Fuse its reasonable attorneys' fees in connection with this action;

E.    A judgment that costs of this action be awarded to Bel Fuse;

F.    An order that Halo pay Bel Fuse prejudgment and post-judgment interest at the highest statutory rate on Bel Fuse's damages, costs and attorneys' fees; and

G.    An order awarding Bel Fuse such other and further relief as may be deemed by this Court to be just and proper.

## JURY DEMAND

Bel Fuse hereby demands trial by jury on all issues so triable.


WOLF BLOCK SCHORR AND
SOLIS-COHEN, LLP


By: _____ /s/ Gary Koenigsberg, Esq._____

Gary L. Koenigsberg
101 Eisenhower Parkway
Roseland, NJ  07068

Joshua L. Raskin (JR4613)
250 Park Avenue
New York, NY 10017

Attorneys for Plaintiff
Bel Fuse, Inc.

Dated: June 5, 2007

# EXHIBIT F

McCARTER & ENGLISH, LLP
Lanny S. Kurzweil
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone:  (973) 622-4444

Attorneys for Defendant
  Halo Electronics, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

BEL FUSE, INC.,

                    Plaintiff,                    07-cv-02168-HAA-ES

        v.                                         **ANSWER TO FIRST AMENDED**
                                                   **COMPLAINT AND CERTIFICATION**
HALO ELECTRONICS, INC.,                            **PURSUANT TO LOCAL RULE 11.2**

                    Defendant.                     **JURY TRIAL DEMANDED**

---

Defendant Halo Electronics, Inc. ("Halo"), with headquarters located at 3005 East Post

Road Front, Las Vegas, Nevada, by its attorneys, McCarter & English, LLP, answers the First

Amended Complaint of Bel Fuse, Inc. ("Bel Fuse"), with headquarters located at 206 Van Vorst

Street, Jersey City, New Jersey.  Except as expressly admitted below, Halo denies each and

every allegation contained in Bel Fuse's Complaint.  Specifically, Halo responds as follows:

## THE PARTIES

1.        Upon information and belief, Halo admits the allegations of paragraph 1.

2.        Halo admits that it is a corporation organized and existing under the laws of the

state of Nevada.  Halo admits that its headquarters are located at 3005 East Post Road Front, Las

Vegas, Nevada.  Halo also admits that it has a place of business at 1861 Landings Drive,

Mountain View, California.  Halo denies the remaining allegations of paragraph 2.

## JURISDICTION AND VENUE

3.      Halo admits that Bel Fuse's claims purport to arise under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*.  Halo also admits that the Court has subject matter jurisdiction over Bel Fuse's claims.  However, Halo denies that Bel Fuse is entitled to any relief.

4.      Halo admits that it does business in the State of New Jersey.  Halo also admits that it transacts business in the State of New Jersey.  Halo denies the remaining allegations of paragraph 4.

5.      Halo denies the allegations of paragraph 5.

## COUNT 1
### (Patent Infringement)

6.      Halo incorporates by reference its responses to paragraphs 1 through 5 above.

7.      Halo admits that Bel Fuse's claims purport to arise under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271, and that its claims purport to seek a finding of willful patent infringement.  Halo denies the remaining allegations in paragraph 7 and denies that Bel Fuse is entitled to any relief.

8.      Halo admits that United States Patent No. 5,736,910 ("the '910 patent") was issued on April 7, 1998 by the United States Patent and Trademark Office.  Halo also admits that the patent is titled "Modular Jack Connector With a Flexible Laminate Capacitor Mounted on a Circuit Board."  Halo also admits that a purported copy of the '910 patent is attached to the First Amended Complaint as Exhibit A.  Halo denies that the patent was duly and legally issued by the United States Patent and Trademark Office and the remaining allegations of Paragraph 8.

9.      Halo lacks sufficient information to admit or deny the allegations contained in paragraph 9 and therefore denies them.

10.      Denied.

2

11.     Denied.

12.     Denied.

13.     Denied.

14.     Denied.

## DEFENSES

In addition to the defenses described herein, Halo specifically reserves the right to allege additional defenses as they become known throughout the course of discovery.

### First Defense
### (Noninfringement)

Halo has not infringed, and does not infringe, either directly or indirectly, any valid and enforceable claim of the '910 patent.

### Second Defense
### (Invalidity and Unenforceability)

The '910 patent is invalid and unenforceable for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, including, without limitation, sections 101, 102, 103, 112, and/or 151.

### Third Defense
### (Laches)

Bel Fuse's claims are barred, in whole or in part, by the doctrine of laches.

### Fourth Defense
### (Estoppel)

Bel Fuse's claims are barred, in whole or in part, by the doctrine of estoppel.

ME1 6608629v.1

**Fifth Defense**
**(Time Limitation on Damages)**

Bel Fuse's claims are precluded by 35 U.S.C. § 286 for recovering damages for any alleged infringement of the '910 patent that occurred more than six years before the filing of the Complaint.

**Sixth Defense**
**(Limitation on Damages)**

Upon information and belief, Bel Fuse is precluded by 35 U.S.C. § 287 from recovering damages for any alleged infringement of the '910 patent that occurred before Bel Fuse made an actual and specific charge of infringement to Halo.

**Prayer for Relief**

WHEREFORE, Halo respectfully prays for judgment as follows:

A.     A declaration that Halo has not infringed and is not infringing, either directly, indirectly, or otherwise, any valid and enforceable claim of the '910 patent;

B.     A declaration that the claims of the '910 patent are invalid and unenforceable;

C.     That Halo, its officers, agents, employees, attorneys, and all persons in active concert or participation with it are permanently enjoined from charging that the '910 patent is infringed by Halo.

D.     Reasonable attorney fees and costs be awarded to Halo under, but not limited to 35 U.S.C. § 285; and

E.     That Halo be awarded such further relief as the Court deems just and proper.

ME1 6608629v.1

### Jury Trial Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Halo hereby demands on its

Answer and defenses a jury trial on all issues so triable.


Dated:  July 27, 2007                                      McCARTER & ENGLISH, LLP


                                                           By:  s/Irene M Hurtado
                                                           _____
                                                           Lanny S. Kurzwell
                                                           Irene M. Hurtado
                                                           Four Gateway Center
                                                           100 Mulberry Street
                                                           Newark, NJ 07102
                                                           Telephone:  (973) 622-4444
                                                           Facsimile:  (973) 624-7070

                                                           *Attorneys for Defendant Halo Electronics, Inc.*

## LOCAL CIV. R. 11.2 CERTIFICATION

The matter in controversy in this action is not the subject of any other action pending in any other Court, or any pending arbitration or administrative proceeding.  There is, however, another unrelated action between the parties presently pending in the United States District Court for the District of Nevada, styled as *Halo Electronics, Inc. v. Bel Fuse, Inc., et al.*, Civ. Action No. 2:07-cv-331-PMP-PAL.


Dated:  July 27, 2007                     McCARTER & ENGLISH, LLP


By:   s/Irene M Hurtado
_____
Lanny S. Kurzwell
Irene M. Hurtado
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone:  (973) 622-4444
Facsimile:  (973) 624-7070

*Attorneys for Defendant Halo Electronics, Inc.*

ME1 6608629v.1

## CERTIFICATE OF SERVICE

I certify that on July 27, 2007, I caused a copy of the above **ANSWER TO FIRST AMENDED COMPLAINT AND CERTIFICATION PURSUANT TO LOCAL RULE 11.2** to be served by regular mail on the following attorneys:

Gary Koenigsberg, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
101 Eisenhower Parkway
Roseland, New Jersey 07068
GKoenigsberg@wolfblock.com

(also served via ECF notification)

Joshua L. Raskin, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
250 Park Avenue
New York, NY 10177
jraskin@wolfblock.com

s/Irene M Hurtado
Irene M. Hurtado

ME1 6608629v.1

# EXHIBIT G

Gary L. Koenigsberg
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
Attorneys for Plaintiff,
Bel Fuse, Inc.

Joshua L. Raskin
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
250 Park Avenue
New York, NY 10017
(212) 986-1116
Attorneys for Plaintiff,
Bel Fuse, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BEL FUSE, INC. | : | |
| Plaintiff, | : | CIVIL ACTION NO.<br>2:07-cv-02168-HAA-ES |
| v. | : | **SECOND AMENDED COMPLAINT** |
| HALO ELECTRONICS, INC. | : | |
| Defendant. | : | |

Plaintiff, Bel Fuse, Inc., by and through its undersigned counsel, for its Second Amended

Complaint against defendant, Halo Electronics Inc., alleges the following upon information and

belief, except as to those allegations concerning Bel Fuse, Inc., which are alleged upon

knowledge.



**EXHIBIT____A____**

## THE PARTIES

1.     Plaintiff Bel Fuse, Inc. ("plaintiff" or "Bel Fuse") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 206 Van Vorst Street, Jersey City, New Jersey.

2.     Defendant Halo Electronics, Inc. ("defendant" or "Halo") is a corporation organized and existing under the laws of the state of Nevada with its principal place of business at 1861 Landings Drive, Mountain View, California.

## JURISDICTION AND VENUE

3.     This is an action to remedy infringement of Bel Fuse's U.S. Patent No. 5,736,910 ("the '910 patent") by Halo and for a declaratory judgment that the claims of U.S. Patent Nos. 5,656,985 ("the '985 patent"), 6,297,720 ("the '720 patent"), 6,297,721 ("the '721 patent"), 6,320,489 ("the '489 patent"), 6,344,785 ("the '785 patent") and 6,662,431 ("the '431 patent") allegedly owned by Halo are invalid, unenforceable, and not infringed by Bel Fuse.  This Court has jurisdiction over the subject matter of the claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

4.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

5.     An actual controversy exists between Bel Fuse and Halo by virtue of allegations made by Halo in an action brought by Halo against Bel Fuse in the United States District Court for the District of Nevada, *Halo Electronics, Inc. v. Bel Fuse, Inc. et al.*, 2:07-cv-00331-PMP-PAL ("the Nevada Action"), for infringement of the '985 patent, the '720 patent, the '721 patent, the '489 patent, the '785 patent and the '431 patent.  In an Order entered on December 7, 2007, the Nevada Action was dismissed as against Bel Fuse for lack of personal jurisdiction.

6.     This Court has personal jurisdiction over Halo because Halo is doing business within this State and judicial district, transacts business within this State and judicial district, has

sold and is selling allegedly infringing products into this State and judicial district, derives substantial revenue from intra-state commerce and is otherwise within the jurisdiction of this Court. In addition, Halo has submitted to the personal jurisdiction of this Court.

7.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district, Halo may be found in this judicial district, and Halo is subject to personal jurisdiction in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. § 1400(b).

## COUNT I
### (Infringement By Halo Of Bel Fuse's '910 Patent)

8.  Bel Fuse restates and realleges the preceding allegations.

9.  This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*, including 35 U.S.C. § 271, and is for willful patent infringement.

10.  On April 7, 1998, the '910 patent, entitled "Modular Jack Connector With A Flexible Laminate Capacitor Mounted On A Circuit Board," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '910 patent is attached hereto as Exhibit A.

11.  Bel Fuse is the assignee of all rights, title, and interest in and to the '910 patent and possesses all rights of recovery under the '910 patent.

12.  Halo has been and is infringing, actively inducing others to infringe, and/or contributing to the infringement of the '910 patent by, directly and/or through intermediaries, making, using, selling, offering for sale and/or importing products in the United States and this judicial district that are covered by one or more claims of the '910 patent, including but not limited to, Halo's FastJacks Integrated RJ-45 Connectors.

- 3 -

13.     As a direct and proximate result of Halo's acts of infringement, Bel Fuse has suffered damages and is entitled to recover an amount adequate to compensate for the infringement under 35 U.S.C. § 284, which amount is to be determined at trial.

14.     Halo has had, at all relevant times, actual and constructive notice that its conduct infringed on the claims of the '910 patent but nevertheless continued its infringing conduct. Halo's infringement has been, and continues to be, willful and, therefore, Bel Fuse is entitled to treble damages under 35 U.S.C. § 284.

15.     This is an exceptional case under 35 U.S.C. § 285 which entitles Bel Fuse to an award of reasonable attorneys' fees.

16.     Halo will continue infringing the '910 patent unless enjoined from further infringement by this Court.

## COUNT II
### (Declaratory Judgment Of Non-Infringement By Bel Fuse Of The '985 Patent, The '720 Patent, The '721 Patent, The '489 Patent, The '785 Patent And The '431 Patent)

17.     Bel Fuse restates and realleges the preceding allegations.

18.     Bel Fuse has not infringed any valid and enforceable claim of any of the '985 patent, the '720 patent, the '721 patent, the '489 patent, the '785 patent and the '431 patent. Therefore, Bel Fuse is entitled to a declaratory judgment that it does not infringe any of those patents.

## COUNT III
### (Declaratory Judgment Of Invalidity Of The '985 Patent, The '720 Patent, The '721 Patent, The '489 Patent, The '785 Patent And The '431 Patent)

19.     Bel Fuse restates and realleges the preceding allegations.

20.     The claims of the '985 patent, the '720 patent, the '721 patent, the '489 patent, the '785 patent and the '431 patent are invalid under one or more provisions of 35 U.S.C. §§ 102, 103

and/or 112. Therefore, Bel Fuse is entitled to a declaratory judgment that those patents are invalid on these grounds.

## **PRAYER FOR RELIEF**

WHEREFORE, Bel Fuse prays for judgment and relief as follows:

A.     A judgment that Halo has infringed and continues to infringe claims of the '910 patent;

B.     An order, pursuant to 35 U.S.C. § 283, permanently enjoining and restraining Halo and its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with each of the foregoing, from infringing, and from contributing to and/or inducing the infringement of, any claims of the '910 patent;

C.     An order, pursuant to 35 U.S.C. § 284, that Halo account to Bel Fuse for an amount adequate to compensate Bel Fuse for damages sustained from Halo's infringing acts, which amount is to be determined, and that said amount be trebled pursuant to 35 U.S.C. § 284;

D.     An order declaring that the '985 patent, the '720 patent, the '721 patent, the '489 patent, the '785 patent and the '431 patent are not infringed by Bel Fuse;

E.     An order declaring the '985 patent, the '720 patent, the '721 patent, the '489 patent, the '785 patent and the '431 patent invalid;

F.     An order, pursuant to 35 U.S.C. § 285, that Halo pay Bel Fuse its reasonable attorneys' fees in connection with this action;

G.     A judgment that costs of this action be awarded to Bel Fuse;

H.     An order that Halo pay Bel Fuse prejudgment and post-judgment interest at the highest statutory rate on Bel Fuse's damages, costs and attorneys' fees; and

I.     An order awarding Bel Fuse such other and further relief as may be deemed by this Court to be just and proper.

## JURY DEMAND

Bel Fuse hereby demands trial by jury on all issues so triable.

WOLF BLOCK SCHORR AND
SOLIS-COHEN, LLP


By:_____/s/ Joshua L. Raskin_____
    Joshua L. Raskin (JR4613)
    250 Park Avenue
    New York, NY 10017

    Gary L. Koenigsberg
    101 Eisenhower Parkway
    Roseland, NJ  07068

    Attorneys for Plaintiff
    Bel Fuse, Inc.

Dated: December 10, 2007

# EXHIBIT H

## Vazquez, Joe

| | |
|---|---|
| **From:** | Raskin, Joshua L. |
| **Sent:** | Wednesday, May 23, 2007 6:27 PM |
| **To:** | 'William Woodford' |
| **Cc:** | Raskin, Martin G.; Michals, Sheri; Koenigsberg, Gary L. |
| **Subject:** | RE: Halo/Bel Fuse: Discovery on Jurisdictional Issues |

Bill,

We are amenable to an extension of time for Halo to respond to the complaint in New Jersey until July 27th. If Halo decides to oppose our motion to dismiss in the Nevada case after it completes its discovery, we can discuss a further extension of time.

Josh

-----Original Message-----
**From:** William Woodford [mailto:woodford@fr.com]
**Sent:** Wednesday, May 23, 2007 1:18 PM
**To:** Raskin, Joshua L.
**Subject:** RE: Halo/Bel Fuse: Discovery on Jurisdictional Issues

Josh, here it is if you do not have it yet. Now that this is in place, I would like to discuss an extension on the New Jersey case. Did you have any additional thoughts since we spoke about it last week?

**William R. Woodford**
**~ Fish & Richardson P.C.**
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Email: woodford@fr.com
Tel: 612-766-2004
Fax: 612-288-9696

---

**From:** Raskin, Joshua L. [mailto:JRaskin@WOLFBLOCK.com]
**Sent:** Tuesday, May 22, 2007 4:41 PM
**To:** William Woodford; FirthJ@gtlaw.com
**Cc:** Michael Kane; Josh Harmon; Raskin, Martin G.; Michals, Sheri
**Subject:** RE: Halo/Bel Fuse: Discovery on Jurisdictional Issues

Thanks. Please send me a copy of the Stipulation as filed.

Josh
-----Original Message-----
**From:** William Woodford [mailto:woodford@fr.com]
**Sent:** Tuesday, May 22, 2007 5:36 PM
**To:** Raskin, Joshua L.; FirthJ@gtlaw.com
**Cc:** Michael Kane; Josh Harmon

**Subject:** Halo/Bel Fuse: Discovery on Jurisdictional Issues

Counsel,

I have attached Halo's interrogatories and document requests on jurisdictional issues.  A hard copy will follow by mail.

Regards,

Bill

**William R. Woodford**

**~ Fish & Richardson P.C.**
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Email: woodford@fr.com
Tel: 612-766-2004
Fax: 612-288-9696

*********************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*********************************************************************************

EXHIBIT I

**Vazquez, Joe**

| | |
|---|---|
| **From:** | William Woodford [woodford@fr.com] |
| **Sent:** | Tuesday, May 29, 2007 2:23 PM |
| **To:** | Raskin, Joshua L.; Raskin, Joshua L. |
| **Subject:** | Halo/Bel Fuse Stipulation |
| **Attachments:** | Halo_Bel Fuse-application to extend time to answer.DOC |

Josh, here's the stipulation from my local counsel.  Please review and let me know
if you have any changes.  Please send a pdf of the signed version.  Also, our local
counsel requested that the signed original be mailed to them.

Regards,

Bill


**William R. Woodford**
**~ Fish & Richardson P.C.**
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Email: woodford@fr.com
Tel: 612-766-2004
Fax: 612-288-9696


*************************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized use or disclosure is prohibited. If
you are not the intended recipient, please contact the sender by reply email and destroy all
copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including
any attachments) is not intended or written to be used, and cannot be used, for the purpose
of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

*************************************************************************************

McCARTER & ENGLISH, LLP
Lanny S. Kurzweil
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444

Attorneys for Defendant
  Halo Electronics, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEL FUSE, INC., <br><br>        Plaintiff, <br><br>      v. <br><br> HALO ELECTRONICS, INC., <br><br>        Defendant. | ) <br> ) <br> )   Civil No. 05-cv-5519 (HAA) <br> ) <br> ) <br> ) <br> )   **STIPULATION AND ORDER** <br> )   **EXTENDING TIME TO ANSWER OR** <br> )   **OTHERWISE MOVE WITH RESPECT** <br> )   **TO THE COMPLAINT** <br> ) <br> ) |

IT IS HEREBY STIPULATED and agreed by and between counsel for the parties herein that the time for Defendant Halo Electronics, Inc. ("Halo Electronics") to answer or otherwise move with respect to plaintiff Bel Fuse, Inc.'s ("Bel Fuse") Complaint is extended until July 27, 2007. In connection with this extension, the parties represent as follows:

1.      On March 15, 2007, Halo Electronics filed a complaint for patent infringement against Bel Fuse in the District of Nevada;

2.      On May 9, 2007, Bel Fuse moved to dismiss the Nevada action for lack of personal jurisdiction;

3.      The parties agreed to discovery on jurisdictional issues in the Nevada action and stipulated that Halo Electronics' opposition to Bel Fuse's motion to dismiss would be due on July 27, 2007;

MEI 6443466v.1

4.      On May 10, 2007, Bel Fuse served Halo Electronics with a complaint for patent

infringement in this Court;

5.      The time for Halo Electronics to answer, move, or otherwise reply would expire on May

30, 2007;

6.      The parties have agreed that it would be beneficial to have Halo Electronics' answer in

this action due on the same date that Halo Electronics' opposition to the motion to dismiss is due

in the Nevada action; and

7.      No previous extension has been obtained.

| | |
|---|---|
| **WOLF, BLOCK, SCHORR, & SOLIS-<br>COHEN, LLP**<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Attorneys for Plaintiff<br>  Bel Fuse, Inc. | **McCARTER & ENGLISH, LLP**<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>Attorneys for Defendant<br>  Halo Electronics, Inc. |

By:_____          By:_____
        Gary L. Koenigsberg                          Lanny S. Kurzweil


Dated: May ____, 2007                    Dated: May ___, 2007

SO ORDERED.


                                        _____
                                        HON. ESTHER SALAS, U.S.M.J.

EXHIBIT J

McCARTER & ENGLISH, LLP
Lanny S. Kurzweil, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444

Attorneys for Defendant
Halo Electronics, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEL FUSE, INC., ) | |
| ) | |
| Plaintiff, ) | Civil No. 2:07-cv-02168 (HAA) (ES) |
| ) | |
| v. ) | |
| ) | **STIPULATION AND ORDER** |
| HALO ELECTRONICS, INC., ) | **EXTENDING TIME TO ANSWER OR** |
| ) | **OTHERWISE MOVE WITH RESPECT** |
| Defendant. ) | **TO THE COMPLAINT** |
| ) | |

IT IS HEREBY STIPULATED and agreed by and between counsel for the parties herein

that the time for Defendant Halo Electronics, Inc. ("Halo Electronics") to answer or otherwise

move with respect to plaintiff Bel Fuse, Inc.'s ("Bel Fuse") Complaint is extended until July 27,

2007. In connection with this extension, the parties represent as follows:

1.      On May 10, 2007, Bel Fuse served Halo Electronics with a complaint for patent

infringement in this Court;

2.      The time for Halo Electronics to answer, move, or otherwise reply would expire on May

30, 2007; and

3.    No previous extension has been obtained.

**WOLF, BLOCK, SCHORR, & SOLIS-
COHEN, LLP**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Attorneys for Plaintiff
  Bel Fuse, Inc.

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Attorneys for Defendant
  Halo Electronics, Inc.

By: _____
        Gary L. Koenigsberg

By: _s/ Lanny S. Kurzweil_
        Lanny S. Kurzweil

Dated: May 29, 2007

Dated: May 29, 2007

SO ORDERED.


_____
HON. ESTHER SALAS, U.S.M.J.

EXHIBIT K

# Raskin, Joshua L.

| | |
|---|---|
| **From:** | Raskin, Joshua L. |
| **Sent:** | Friday, December 07, 2007 4:50 PM |
| **To:** | 'William Woodford' |
| **Cc:** | Raskin, Martin G.; Koenigsberg, Gary L.; Slawe, Daniel R.; Michals, Sheri |
| **Subject:** | Bel Fuse v. Halo |
| **Attachments:** | Order Granting Motion to Dismiss Halo's First Amended Complaint.pdf |

Bill:

As you may already be aware, Judge Pro has entered an Order today dismissing Halo's First Amended Complaint against Bel Fuse for lack of personal jurisdiction.  A copy of the Order is attached.

Assuming Halo still considers Bel Fuse to be infringing Halo's patents asserted in the dismissed Nevada action, as intimated by Judge Pro during the hearing on Bel Fuse's motion to dismiss, any new action on those patents should be filed in New Jersey as part of the patent infringement case pending there between the same parties.  Accordingly, Bel Fuse intends to bring a motion for leave to amend its Complaint in the pending New Jersey action to include a claim for a declaratory judgment that Bel Fuse does not infringe Halo's patents.  Please let us know as soon as possible whether Halo will oppose Bel Fuse's motion.

Do not hesitate to call me if you wish to discuss.

Josh

Joshua L. Raskin
Wolf Block Schorr and Solis-Cohen LLP
250 Park Avenue
Suite 1000
New York, New York 10177
Direct Phone 212-883-4910
Direct Fax 212-672-1110
jraskin@wolfblock.com



**EXHIBIT** _____

12/10/2007

EXHIBIT L

Gary L. Koenigsberg
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
Attorneys for Plaintiff,
Bel Fuse, Inc.

Joshua L. Raskin
**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP**
A Pennsylvania Limited Liability Partnership
250 Park Avenue
New York, NY 10017
(212) 986-1116
Attorneys for Plaintiff,
Bel Fuse, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BEL FUSE, INC. | CIVIL ACTION NO.: 07-2168 (HAA) (ES) |
| Plaintiff, | **NOTICE OF MOTION** |
| v. | **TO FILE SECOND AMENDED** |
| HALO ELECTRONICS, INC. | **COMPLAINT** |
| Defendant. | |

TO:     **LANNY STEVEN KURZWEIL**
**MCCARTER & ENGLISH, LLP**
**FOUR GATEWAY CENTER**
**100 MULBERRY STREET**
**PO BOX 652**
**NEWARK, NJ 07101-0652**
**(973) 622-4444**
**Attorneys for Defendants**

**PLEASE TAKE NOTICE** that, on January 8, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, the undersigned, attorneys for Plaintiff Bel Fuse, Inc., will move before the United States District Court for the District of New Jersey, Honorable Ester Salas, at U.S. Courthouse, Martin Luther King, Jr. Federal Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101, for an Order granting Plaintiff leave to file a Second Amended Complaint.

**PLEASE TAKE FURTHER NOTICE** that, in support thereof, the undersigned relies upon the accompanying Memorandum in Support and Declaration of Joshua L. Raskin.

**PLEASE TAKE FURTHER NOTICE** that a copy of Plaintiff's proposed Second Amended Complaint is attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is submitted herewith.  Oral argument is hereby waived unless opposition is submitted.

WOLF BLOCK SCHORR AND
SOLIS-COHEN, LLP

By: _____
    Joshua L. Raskin (JR4613)
    250 Park Avenue
    New York, NY 10017
    Attorneys for Plaintiff
    Bel Fuse, Inc.

DATED:  December 10, 2007

## CERTIFICATION OF FILING AND SERVICE

I certify that the Notice of Motion, Memorandum in Support, supporting Declaration and proposed Form of Order were electronically filed to the Clerk, United States District Court, District of New Jersey, U.S. Courthouse, Martin Luther King, Jr. Federal Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101. A courtesy copy was mailed to the Honorable Ester Salas, United States District Court, U.S. Courthouse, Martin Luther King, Jr. Federal Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101.

I further certify that copies of the foregoing were forwarded, on this date, via Electronic Filing to Defendant's counsel Lanny S. Kurzweil, Esq., McCarter & English LLP , Four Gateway Center, 100 Mulberry Street, PO BOX 652, Newark, NJ 07101-0652.

I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

By: */s/ Joshua L. Raskin* _____
　　Joshua L. Raskin

Dated: December 10, 2007