1
2
3
4
5
6
7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12   HALO ELECTRONICS, INC.,                    No. C-07-06222 RMW

13            Plaintiff,

14        v.                                     ORDER DENYING E & E MAGNETIC
                                                 PRODUCTS LIMITED'S MOTION TO
15   BEL FUSE INC., ELEC & ELTEK (USA)           DISMISS FOR INSUFFICIENT SERVICE
     CORPORATION, WURTH ELECTRONICS              AND PERMITTING JURISDICTIONAL
16   MIDCOM, INC., XFMRS, INC., E & E            DISCOVERY
     MAGNETIC PRODUCTS LIMITED,
17                                               **[Re Docket No. 190]**
              Defendants.
18

19

20

21        Defendant E&E Magnetic Products Limited ("E&E Magnetic") moves to dismiss plaintiff

22   Halo Electronics, Inc. ("Halo")'s First Amended Complaint ("FAC") for insufficient service of

23   process and lack of personal jurisdiction.  For the following reasons, the court denies the motion to

24   dismiss for insufficient service of process and defers ruling on the motion to dismiss for lack of

25   personal jurisdiction pending jurisdictional discovery.

26

27

28

# I. SERVICE OF PROCESS

## A.     Service on California Subsidiary

E&E Magnetic seeks dismissal for insufficient service of process. E&E Magnetic is a foreign company organized under the laws of the British Virgin Islands with its principal place of business in Hong Kong. E&E Magnetic contends that Halo cannot serve E&E Magnetic simply by serving its wholly owned subsidiary in California, Elec & Eltek (USA) Corp. ("E&E USA"). According to E&E Magnetic, service can only be accomplished by following the protocol set out in the Hague Convention.

### 1.     Legal Standard

The Hague Convention is a multilateral treaty that sets forth a procedure for serving process abroad. "By virtue of the Supremacy Clause, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkwagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). However, the scope of the Hague Convention is limited to cases "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* The Supreme Court made clear in *Volkwagenwerk* that the Hague Convention therefore does not apply when service on a domestic agent is valid under the law of the forum state. *Id.* at 707-08.

Under California law, a foreign corporation may be served by serving the foreign corporation's "general manager in this state." Cal. Corp. Code § 2110. The requirement of serving the general manager in California is met "when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be appraised of the service made." *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83 (1959) (quoting *Eclipse Fuel Eng'g Co. v. Super. Ct.*, 148 Cal. App. 2d 736, 746 (1957)). Whether an entity constitutes a corporation's general manager in California depends on the particular facts of the case. *Id.*

In *Cosper*, the California Supreme Court held that a California representative of a Massachusetts gun manufacturer constituted the gun manufacturer's "general manager in this state." *Id.* at 84. The relationship between the gun manufacturer and its California representative was limited to a non-exclusive contract for the representative to promote the sale of the gun manufacturer's products on the West Coast for a commission. *Id.* at 80. The gun manufacturer had

1  no financial interest in its California representative, nor any control over its employees, and

2  provided no assistance other than furnishing advertising materials. *Id.* at 80-81.  Nonetheless, the

3  court found that this arrangement provided the gun manufacturer with substantially the same

4  business advantages it would have enjoyed if it had opened its own offices or hired its own agents in

5  California. *Id.* at 84.  The California representative provided the gun manufacturer with the

6  opportunity for regular contact with California customers and a channel for a continuous flow of

7  business into California. *Id.*  Moreover, there was "ample regular contact" between the California

8  representative and the gun manufacturer, and the California representative was of "sufficient rank

9  and character" such that it was reasonably certain that the gun manufacturer would be appraised of

10  the service of process. *Id.* at 83.  Therefore, service on the gun manufacturer could be accomplished

11  by serving its California representative. *Id.* at 84.

12              **2.       Relationship between E&E Magnetic and E&E USA**

13         If E&E USA constitutes E&E Magnetic's "general manager in this state," then service on

14  E&E USA is sufficient to serve E&E Magnetic, and the Hague Convention does not apply. *See* Cal.

15  Corp. Code § 2110; *Volkswagenwerk*, 486 U.S. at 707-08.  The court therefore considers whether

16  E&E USA qualifies as E&E Magnetic's general manager in California.

17         E&E USA's staff function as a liaison between United States customers and E&E Magnetic.

18  United States customers who encounter problems with E&E Magnetic's products contact E&E USA,

19  who then directs them to the quality department at E&E Magnetic. Dkt. No. 191 ("Simmons Decl.")

20  ¶ 5. E&E USA staff also respond to inquiries from potential and existing United States customers

21  by communicating their requests to E&E Magnetic. *Id.* ¶ 10.  The primary purpose for creating

22  E&E USA was "to hire employees in the United States and provide benefits for those employees."

23  *Id.* ¶ 11.

24         The ties between E&E Magnetic and its wholly owned California subsidiary are closer and

25  stronger than the casual, non-exclusive relationship between the gun manufacturer and its California

26  representative in *Cosper*.  Based on E&E Magnetic's own description of its arrangement with E&E

27  USA, E&E USA appears to be the American face of E&E Magnetic.  E&E USA provides E&E

28  Magnetic with the opportunity for regular contact with United States customers and a channel for a

ORDER DENYING E & E MAGNETIC PRODUCTS LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE AND
PERMITTING JURISDICTIONAL DISCOVERY—No. C-07-06222 RMW
CCL                                                    3

1 continuous flow of business into the United States. Because E&E USA, from its California location,

2 acts as a liaison between United States customers and E&E Magnetic, this arrangement provides

3 E&E Magnetic with substantially the same business advantages it would have enjoyed if it had

4 opened its own offices or hired its own agents in California. As E&E Magnetic admits, the primary

5 purpose behind E&E USA is to hire employees in California and to provide these employees with

6 benefits. Simmons Decl. ¶ 11. Moreover, because E&E USA staff are responsible for

7 communicating with E&E Magnetic regarding inquiries from potential and existing customers in the

8 United States, it appears that there would be ample regular contact between E&E USA and E&E

9 Magnetic and that contact would be of sufficient rank and character to make it reasonably certain

10 that E&E Magnetic would be appraised of the service of process. For these reasons, E&E USA

11 constitutes E&E Magnetic's general manager in this state for the purpose of service of process, and

12 thus service on E&E USA is sufficient to serve E&E Magnetic. *See* Cal. Corp. Code § 2110;

13 *Volkwagenwerk*, 486 U.S. at 707-08.

14       **B.**       **Sufficiency of Service on E&E USA**

15       E&E Magnetic argues that even if service on E&E USA is enough to serve E&E Magnetic,

16 service on E&E USA was deficient. Under California law, a corporation may be served by either:

17 (1) personal delivery of a copy of the summons and complaint to an officer, general manager, or a

18 person authorized by the corporation to receive service of process or (2) "leaving a copy of the

19 summons and complaint during usual office hours in his or her office . . . with the person who is

20 apparently in charge thereof" and following up by mailing the papers to the person to be served at

21 the office address. Cal. Code Civ. Proc. §§ 415.20(a), 416.10(b). E&E Magnetic argues that service

22 upon E&E USA was deficient because: (1) service papers were not left with "the person who is

23 apparently in charge" of the E&E USA office; (2) the subsequent mailing of service papers was not

24 addressed to the person to be served; and (3) Halo was required to attempt personal service before

25 resorting to substituted service.

26       **1.**       **Person Who Is Apparently in Charge**

27       On April 2, 2010, John Cook, a process server, went to the registered address of E&E USA,

28 5201 Great America Parkway, Suite 355, Santa Clara, California 95054. *See* Zheng Decl. Ex. 11;

ORDER DENYING E & E MAGNETIC PRODUCTS LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE AND
PERMITTING JURISDICTIONAL DISCOVERY—No. C-07-06222 RMW
CCL                                                     4

1  Dkt. No. 193 ("Kwok Decl.") ¶ 4; Dkt. No. 206 ("Cook Decl.") ¶ 8.  Cook saw a posted sign at the

2  office that stated "Elec & Eltek."  Cook Decl. ¶ 8.  Ann Kwok, who is an employee of Elec & Eltek

3  PCB ("E&E PCB") and is not an employee, agent, or representative of E&E USA, was present at the

4  office.  Kwok Decl. ¶¶ 1, 2, 5; Cook Decl. ¶ 10.  According to Kwok, she informed Cook that she

5  was not an employee of E&E USA but was an employee of E&E PCB.  Kwok Decl. ¶ 6.  According

6  to Cook, Kwok merely stated that "this was not Elec & Eltek Magnetic (USA) but PCB" and refused

7  to sign for the documents.  Cook Decl. ¶ 10.  Cook asked Kwok why the posted sign said "Elec &

8  Eltek" rather than "PCB" and did not receive an explanation.  *Id.* ¶ 10.  Cook believed Kwok was not

9  being forthcoming and left the service documents on Kwok's desk.  *Id.* ¶¶ 12, 18.

10  　　　　　As an employee of E&E PCB rather than an employee of E&E USA, Kwok was not actually

11  in charge of the E&E USA office.  However, California law only requires service papers to be left

12  with the person "who is *apparently* in charge" of the office, not the person who *actually* is in charge.

13  Cal. Code Civ. Proc. § 415.20(a) (emphasis added).  Setting aside for a moment the question of what

14  Kwok said to Cook, it would appear that Kwok was in charge due to her presence at the office suite

15  at 5201 Great America Parkway, Suite 355, Santa Clara, California 95054.  Given that this is E&E

16  USA's registered address and a posted sign said "Elec & Eltek," there was a reasonable basis for

17  believing that this office suite belonged to E&E USA.  Therefore, the exact substance of what Kwok

18  said to Cook is inconsequential.  There is no evidence suggesting that Kwok provided any

19  corroboration for her alleged statement that she was an employee of another company.  On the other

20  hand, Cook had a reasonable basis for believing that she was employed by E&E USA.  Under these

21  circumstances, the court finds that Kwok was "apparently in charge" of the E&E USA office.  To

22  find otherwise would allow defendants to evade service of process simply by making uncorroborated

23  statements denying any relation to the party sought to be served.

24  　　　　　　　　　**2.　　　Addressing of Mailed Papers**

25  　　　　In order to serve a person pursuant to California Code of Civil Procedure Section 415.20, a

26  plaintiff must first leave a copy of the summons and complaint at the person's office with the person

27  apparently in charge thereof and then mail a copy of the summons and complaint "to the person to

28  be served at the place where a copy of the summons and complaint were left."  Cal. Code Civ. Proc.

§ 415.20(a). E&E Magnetic complains that Halo addressed its subsequent mailing of service papers generically to "E&E Magnetic Products Limited (c/o Elek & Eltek (USA) Corporation)" rather than addressing it to an appropriate officer, manager, or other authorized agent for service of E&E USA. Although E&E Magnetic is correct that the mailing should have been addressed to the appropriate individual at E&E USA rather than to E&E USA generally, the court finds that Halo has substantially complied with the requirements for service of process. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (requiring "substantial compliance" with service procedures). Requiring Halo to resend the papers would accomplish little in light of the actual notice that has been achieved and would unnecessarily delay further progress in this action.

### 3. Substituted Service

E&E Magnetic contends that service was deficient because Halo failed to attempt personal service before it resorted to substituted service. However, California Code of Civil Procedure Section 415.20 expressly authorizes service of process by leaving a copy of the summons and complaint at a defendant's office with the person who is apparently in charge, followed by mailing the papers to the same office address. Unlike other methods of substituted service, such as leaving papers at a person's dwelling house or usual place of abode, there is no requirement that the plaintiff first attempt personal service with reasonable diligence before utilizing this method of service. *See* Cal. Code Civ. Proc. § 415.20 (compare language in subsections (a) and (b)). Therefore, Halo was not required to attempt personal service prior to serving E&E USA in accordance with Section 415.20. Nonetheless, Halo did in fact make several attempts to personally serve Charles Lee, the registered agent of E&E USA, prior to resorting to substituted service in accordance with Section 415.20. Dkt. No. 205 ("Zheng Decl.") Exs. 10, 11. Therefore, the court concludes that Halo adequately served E&E USA and thus also served E&E Magnetic.

### II. PERSONAL JURISDICTION

E&E Magnetic also argues that it should be dismissed from this action for lack of personal jurisdiction. "California's 'long-arm' statute extends the jurisdiction of California courts to the outermost boundaries of due process." *Rocklin De Mexico, S.A. v. Superior Court*, 157 Cal. App. 3d 91, 94 (1984); *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on

ORDER DENYING E & E MAGNETIC PRODUCTS LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE AND PERMITTING JURISDICTIONAL DISCOVERY—No. C-07-06222 RMW
CCL                                                                                                          6

§ 415.20(a). E&E Magnetic complains that Halo addressed its subsequent mailing of service papers generically to "E&E Magnetic Products Limited (c/o Elek & Eltek (USA) Corporation)" rather than addressing it to an appropriate officer, manager, or other authorized agent for service of E&E USA. Although E&E Magnetic is correct that the mailing should have been addressed to the appropriate individual at E&E USA rather than to E&E USA generally, the court finds that Halo has substantially complied with the requirements for service of process. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (requiring "substantial compliance" with service procedures). Requiring Halo to resend the papers would accomplish little in light of the actual notice that has been achieved and would unnecessarily delay further progress in this action.

### 3. Substituted Service

E&E Magnetic contends that service was deficient because Halo failed to attempt personal service before it resorted to substituted service. However, California Code of Civil Procedure Section 415.20 expressly authorizes service of process by leaving a copy of the summons and complaint at a defendant's office with the person who is apparently in charge, followed by mailing the papers to the same office address. Unlike other methods of substituted service, such as leaving papers at a person's dwelling house or usual place of abode, there is no requirement that the plaintiff first attempt personal service with reasonable diligence before utilizing this method of service. *See* Cal. Code Civ. Proc. § 415.20 (compare language in subsections (a) and (b)). Therefore, Halo was not required to attempt personal service prior to serving E&E USA in accordance with Section 415.20. Nonetheless, Halo did in fact make several attempts to personally serve Charles Lee, the registered agent of E&E USA, prior to resorting to substituted service in accordance with Section 415.20. Dkt. No. 205 ("Zheng Decl.") Exs. 10, 11. Therefore, the court concludes that Halo adequately served E&E USA and thus also served E&E Magnetic.

### II. PERSONAL JURISDICTION

E&E Magnetic also argues that it should be dismissed from this action for lack of personal jurisdiction. "California's 'long-arm' statute extends the jurisdiction of California courts to the outermost boundaries of due process." *Rocklin De Mexico, S.A. v. Superior Court*, 157 Cal. App. 3d 91, 94 (1984); *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on

ORDER DENYING E & E MAGNETIC PRODUCTS LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE AND PERMITTING JURISDICTIONAL DISCOVERY—No. C-07-06222 RMW
CCL                                                                                                          6

1  any basis not inconsistent with the Constitution of this state or of the United States."). Due process

2  is satisfied when the defendant has "minimum contacts with [the forum state] such that the

3  maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l*

4  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

5       A court may exercise general jurisdiction over a defendant where the defendant's contacts

6  with the forum state "are so substantial, continuous, and systematic that the defendant can be

7  deemed to be 'present' in that forum for all purposes." *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

8  *L'antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Absent general jurisdiction, a forum may

9  only exercise specific jurisdiction based on the relationship between a defendant's forum contacts

10 and the plaintiff's claim. *Id.* "Whether dealing with specific or general jurisdiction, the touchstone

11 remains purposeful availment to ensure that a defendant will not be haled into a jurisdiction solely as

12 a result of random, fortuitous, or attenuated contacts." *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d

13 1072, 1076 (9th Cir. 2003) (citations omitted). In addition, after finding a basis for specific or

14 general jurisdiction, the court must also find that assertion of jurisdiction is reasonable. *Id.* at 1077

15 (citing *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852-53 (9th Cir. 1993)).

16      **A.    General Jurisdiction**

17      To find general jurisdiction, E&E Magnetic's contacts with California must be so substantial,

18 continuous, and systematic as to "approximate physical presence." *Tuazon v. R.J. Reynolds Tobacco*

19 *Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

20 223 F.3d 1082, 1086 (9th Cir. 2000)). "[D]etermining whether a corporate defendant's contacts in a

21 particular case are substantial and continuous turns on the 'economic reality of the defendants'

22 activities rather than a mechanical checklist.'" *Id.* at 1173 (quoting *Gates Learjet Corp. v. Jensen*,

23 743 F.2d 1325, 1331 (9th Cir. 1984)).

24      Halo relies primarily upon contacts that E&E USA has with California as evidence of

25 sufficient minimum contacts by E&E Magnetic with California. As a general matter, the parent-

26 subsidiary relationship is not sufficient to attribute the contacts of the subsidiary to the parent for

27 jurisdictional purposes. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d

28 1122, 1134 (9th Cir. 2003). However, a subsidiary's contacts may be imputed to the parent where

1  the subsidiary is the parent's alter ego or acts as the general agent of the parent. *Id.* Halo does not

2  claim that E&E USA is the general agent of E&E Magnetic but does contend that E&E USA is the

3  alter ego of E&E Magnetic. To establish that a subsidiary is the alter ego of the parent corporation,

4  the plaintiff:

5  > must make out a prima facie case (1) that there is such unity of interest and ownership
   > that the separate personalities [of the two entities] no longer exist and (2) that failure

6  > to disregard [their separate identities] would result in fraud or injustice. The plaintiff
   > must show that the parent exercises such control over the subsidiary so as to render

7  > the latter a mere instrumentality of the former.

8  *Id.* at 1134-35 (internal citations omitted).

9    E&E USA is a wholly owned subsidiary of E&E Magnetic. However, "100% control

10  through stock ownership does not by itself make a subsidiary the alter ego of the parent." *Id.* at

11  1135. The court thus considers what other evidence there is suggesting that E&E USA is E&E

12  Magnetic's alter ego. Based on E&E USA's initial disclosures and findings on Internet websites, it

13  appears that E&E USA and E&E Magnetic are run by the same senior officers. Even if this is true

14  (which E&E Magnetic disputes), the mere fact that the companies are run by the same senior

15  officers does not necessarily render E&E USA the alter ego of E&E Magnetic because "a parent

16  corporation may be directly involved in the activities of its subsidiaries without incurring liability so

17  long as that involvement is consistent with the parent's investor status." *See id.* (quoting *Doe v.*

18  *Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

19    Halo also points to E&E Magnetic's website and marketing materials, which refer to E&E

20  USA's California office as a "sales location" or "sales liaison office" and direct potential customers

21  in North America to call E&E USA's phone number to request samples and inquire about products.

22  Zheng Decl. Exs. 2, 3, 11, 22; Compl. ¶ 7. E&E Magnetic admits that E&E USA acts as a customer

23  liaison for initial customer contact and responds to inquiries from potential and existing customers

24  of E&E Magnetic. Simmons Decl. ¶¶ 5, 7, 10. While these facts demonstrate that E&E USA

25  appears to be the American face of E&E Magnetic to the public, Halo has not shown that E&E

26  Magnetic exercises such control over E&E USA so as to render E&E USA a mere instrumentality of

27  E&E Magnetic. There is no evidence on the record that E&E Magnetic controls E&E USA's

28  internal affairs or daily operations.

**United States District Court**
For the Northern District of California

1    Unless Halo is able to establish that E&E USA is E&E Magnetic's alter ego, the court may

2  not consider E&E USA's contacts with California in determining whether the court has personal

3  jurisdiction over E&E Magnetic. *See Rutsky*, 328 F.3d at 1134.  The only remaining evidence

4  offered by Halo of contacts between E&E Magnetic and California is: (1) the network of

5  representatives and distributors that E&E Magnetic maintains in the United States, including several

6  located in California, and (2) E&E Magnetic's receipt of an award for Excellence in Supplier

7  Account Team Service from Cisco Systems ("Cisco"), a California corporation.  Zheng Decl. Exs. 3,

8  20.  These contacts are not sufficiently substantial, continuous, and systematic to "approximate

9  physical presence" and thus provide a basis for general jurisdiction. *Tuazon*, 433 F.3d at 1169.

10    **B.    Specific Jurisdiction**

11    In the Ninth Circuit, specific jurisdiction is analyzed under a three prong test: (1) the

12  nonresident defendant must have purposefully availed himself of the privilege of conducting

13  activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or

14  result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be

15  reasonable. *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991).  The plaintiff bears the

16  burden of establishing the first and second prongs, after which the burden shifts to the defendant to

17  "'present a compelling case' that the exercise of jurisdiction would not be reasonable."

18  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King*

19  *Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

20    To establish specific jurisdiction, Halo must show that E&E Magnetic purposefully availed

21  itself of the privilege of conducting activities in California by some affirmative act or conduct, and

22  that its claims arise out of these California activities.  Halo's claims in this action are for patent

23  infringement.  As discussed above, unless Halo is able to establish that E&E USA is E&E

24  Magnetic's alter ego, the court may not impute E&E USA's contacts with California upon E&E

25  Magnetic for jurisdictional purposes.  It appears that the only contacts E&E Magnetic has directly

26  with California is: (1) it maintains relationships with representatives and distributors in California,

27  and (2) it has received an award for supplier excellence from Cisco, a California corporation.  Zheng

28

1  Decl. Exs. 3, 20.  Halo has not shown that its claims for patent infringement arise out of the contacts

2  that E&E Magnetic has with any of its California representatives or distributors.

3      Receipt of the Cisco award for supplier excellence indicates that E&E Magnetic acts or has

4  acted as a supplier for Cisco.  However, Halo has not shown that its claims for patent infringement

5  arise out of E&E Magnetic's activities as a supplier for Cisco.  As E&E Magnetic points out, though

6  Cisco is a California corporation, it has a global presence.  Thus, E&E Magnetic may be a supplier

7  for Cisco without conducting any activity within the United States.  Since United States patent laws

8  only regulate conduct within the United States, Halo's claims cannot arise out of E&E Magnetic's

9  activity outside of the United States. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55

10  (2007).  The only evidence Halo offers to support its contention that E&E Magnetic sold products to

11  Cisco in the United States is an interrogatory response from E&E USA.  The interrogatory response

12  indicates that E&E Magnetic products were sold to a Thailand corporation with the understanding

13  that the Thailand corporation would use those products to provide manufacturing services to Cisco

14  in the United States.  Zheng Decl. Ex. 6.  Sales to a Thailand corporation with the knowledge that

15  the Thailand corporation will use the products it purchases in its provision of manufacturing services

16  to Cisco does not equate with sales to Cisco.  *See Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480

17  U.S. 102, 112 (1987) ("a defendant's awareness that the stream of commerce may or will sweep the

18  product into the forum State does not convert the mere act of placing the product in the stream of

19  commerce into an act purposefully directed toward the forum State").  Therefore, Halo has not

20  shown that its claims arise out of E&E Magnetic's purposeful availment of the privilege of

21  conducting activities in California.

22      **C.      Jurisdictional Discovery**

23      Halo has requested jurisdictional discovery.  As explained above, E&E Magnetic's direct

24  contacts with California are insufficient for the court to exert personal jurisdiction over E&E

25  Magnetic.  However, further discovery may reveal facts showing that E&E USA is the alter ego of

26  E&E Magnetic, such that the contacts of E&E USA may be imputed upon E&E Magnetic for

27  jurisdictional purposes.  The court therefore grants Halo's request for jurisdictional discovery, the

28

1   scope of which is to be determined by the magistrate judge, and defers ruling on the motion to

2   dismiss for lack of personal jurisdiction pending jurisdictional discovery.

3                                        **III.  ORDER**

4           For the foregoing reasons, the court denies E&E Magnetic's motion to dismiss for

5   insufficient service and defers ruling on E&E Magnetic's motion to dismiss for lack of personal

6   jurisdiction pending jurisdictional discovery.  Once jurisdictional discovery has been completed, the

7   parties are to submit to the court a joint proposal for further briefing on the issue of personal

8   jurisdiction, including a date not more than 120 days from this order by which the court can consider

9   the matter submitted.

10

11

12

13  DATED:      6/14/10                              _Ronald M Whyte_

14                                                   RONALD M. WHYTE
                                                     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING E & E MAGNETIC PRODUCTS LIMITED'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE AND
PERMITTING JURISDICTIONAL DISCOVERY—No. C-07-06222 RMW
CCL                                                  11