**E-FILED on** 5/7/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HALO ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> XFMRS, INC., <br><br> Defendants. | No. 07-CV-06222 RMW <br><br> ORDER DENYING DEFENDANT'S MOTION FOR ORDER OF CONTEMPT <br><br> **[Re Docket No. 383]** |

Defendant XFMRS ("defendant") seeks an order of contempt against Halo Electronics, Inc. ("plaintiff") for allegedly violating a protective order limiting the disclosure of certain materials produced during discovery in this closed case. The court has heard the arguments of the parties and considered the papers submitted in support of the motion. For the reasons set forth below, the court denies defendant's motion for an order of contempt.

**I. BACKGROUND**

This dispute arises from two separate patent infringement suits initiated by plaintiff in 2007. On March 15, 2007, plaintiff filed suit in the District of Nevada ("Nevada action") against Pulse Electronics, Inc. ("Pulse"). On December 7, 2007, plaintiff brought the instant action against defendant in this court ("California action"). In both cases, plaintiff alleges that the defendants sold products covered by plaintiff's patents.

On February 16, 2010, Judge Lloyd issued a stipulated protective order (the "protective order") in the California action. In relevant part, the protective order provided that: "To give each other party an opportunity to review the transcript for PROTECTED INFORMATION, the parties shall not disseminate a deposition transcript or the contents thereof to anyone not permitted to access PROTECTED INFORMATION for a period of fourteen calendar days after receipt of the official transcript." Dkt. No. 149 at ¶ 4. Paragraph 8 of the protective order mandates that "PROTECTED INFORMATION shall be maintained in confidence by the party receiving it and may be used solely for the purpose of conducting this litigation, and not for any other purpose whatsoever." *Id*. at ¶ 8. Paragraph 9 states: "access to PROTECTED INFORMATION shall be restricted to (1) the court, (2) any court having jurisdiction over this action, (3) outside counsel of the parties, (4) officers before whom a deposition or other testimony is taken, (5) and other individuals and business entities as specified." Dkt. No. 149.

In September 2010, an issue arose as to plaintiff's preparation for the deposition of T.K. Luk, an employee of defendant's wholly-owned subsidiary XFMRS, Ltd, in the Nevada action. Plaintiff sought to depose Mr. Luk because Pulse's expert relied on a declaration from Mr. Luk indicating that Mr. Luk was the inventor of the patented subject matter in arguing that the patents-in-suit were invalid. *See* Dkt. No. 386 Ex. 2. Prior to the deposition, plaintiff served subpoenas on defendant requesting certain documents relevant to Mr. Luk's assertions. *Id*. Ex. 17. On November 10, 2010, after a string of emails between the parties concerning plaintiff's subpoenas, defendant's counsel sent plaintiff's counsel the following message (the "stipulation email"):

> Defendant's position is that, subject to any relevant objections, any non-privileged and responsive documents have been produced (or made available for inspection) to plaintiff in the California litigation. I believe ESI [electronically stored information] production is ongoing in that case, and would also include responsive documents. It would be burdensome, in light of the short time frame, to product a duplicative set for the [Nevada action.] If there is an issue with attorneys' eyes only documents for documents produced in the California litigation, *we will stipulate as necessary that they can be used in the Nevada litigation so long as they are treated as attorneys' eyes only documents in that litigation.*

*Id*. Ex. 21 (emphasis added). Plaintiff responded as follows:

> Plaintiff intends to produce defendant's documents that were produced in the California action to Pulse based on defendant's position that documents responsive to plaintiff's subpoena are one in the same with documents produced by defendant in the

ORDER DENYING DEFENDANT'S MOTION FOR ORDER OF CONTEMPT—No. 07-CV-06222 RMW
CVH 2

> California action. These documents will be produced under the terms you propose below regarding the treatment of the AEO documents. Please confirm that defendant does not object to this production no later than November 24, 2010 at 11:00 AM CT. If we do not hear from you by that time, and consistent with your email below, we intend to make the production.

*Id*. Ex. 22. Counsel for defendant never responded to plaintiff's email. *See* Dkt. No. 386. The deposition of Mr. Luk took place on November 17, 2010. *See* Dkt. No. 386. On November 24, 2010, plaintiff disclosed to Pulse certain documents that had been produced by defendant in the California action, noting that some documents had been designated "Attorneys' Eyes Only" and requesting that Pulse treat them accordingly. *Id*. Ex. 23.

Fact discovery in the California action continued through the end of 2010 and into 2011. At some point, defendant produced several emails drafted by Tony Imburgia, defendant's president, Mr. Luk, and other employees from defendant's manufacturing facility in China. The emails revealed that in early September 2010, Mr. Imburgia sought documents from Mr. Luk to support defendant's motion for summary judgment of non-infringement. That motion was based in part on an assertion that defendant's products had stopped using silicone–an alleged requirement of the asserted patents–by 2001. *See* Dkt. No. 386 Ex. 25; Dkt. No. 321. In response to Mr. Imburgia's request, Mr. Luk wrote that the "real/old" documents Mr. Imburgia requested did not exist, and that he "had asked Liao/Sunyi to make some fake documents." *Id*. On September 7, 2010, defendant's employee Mr. Sunyi notified Mr. Imburgia that defendant actually stopped using silicone in 2003. *See* Dkt. No. 386 Ex. 27. Within a week of this exchange, Mr. Imburgia submitted a declaration to this court along with defendant's motion for summary judgment stating that defendant had stopped using silicone in 2001. *See* Dkt. No. 322 at ¶ 18.

Plaintiff deposed Mr. Imburgia on June 27 and 28, 2011. *See* Dkt. No. 383. During the deposition, counsel for plaintiff walked Mr. Imburgia through the internal emails located during discovery. *See* Dkt. No. 386 Ex. 28. Shortly thereafter, the parties settled the case. *Id*. The California action was dismissed with prejudice on August 23, 2011. *See* Dkt. No. 381.

Meanwhile, the Nevada action progressed towards trial. In that case, Pulse indicated that it intended to call Mr. Luk as a witness to support its invalidity contentions. *See* Dkt. No. 31. Believing that the materials produced in the California action were relevant to Mr. Luk's credibility,

on December 19, 2011, plaintiff included Mr. Imburgia's rough deposition transcripts and related email exhibits in its pre-trial order submissions. *See* Dkt. No. 386 Ex. 29. The transcripts and exhibits were marked "Attorneys' Eyes Only." *Id.* Ex. 30. One day later, Pulse requested that plaintiff withdraw the materials, accusing plaintiff of violating the protective order in the California action. *Id*. Ex. 30. Pulse also alerted counsel for defendant when it received plaintiff's pre-trial order materials. *Id*.

On December 22, 2011 defendant sent plaintiff the following email:

> Plaintiff never requested permission from defendant to disclose Mr. Imburgia's transcript or exhibits. Defendant has never given, nor has been requested to give, permission to produce to Pulse any documents produced by defendant after November 24, 2010. To ensure no ambiguity: defendant does not authorize plaintiff to disclose Mr. Imburgia's deposition transcript and corresponding transcripts in any other litigation for any purpose whatsoever. In light of the above, please confirm that plaintiff immediately will retract all copies of Mr. Imburgia's transcript and exhibits disclosed to Pulse Electronics, Inc., and assure that [Pulse] destroys all copies of Mr. Imburgia's deposition transcript and exhibits in its possession.

*Id*. Ex. 32.

On December 23, 2011, plaintiff responded that it understood the disclosure of the disputed materials to be proper under the terms of the stipulation email. *Id.* Ex. 33. Plaintiff also indicated that it had not disclosed any "confidential information," and that it intended to leave the materials on the exhibit list in the Nevada action until the issue was resolved. *Id.*

Plaintiff and defendant have conferred multiple times since plaintiff's designation of the transcript and corresponding exhibits but have failed to settle their dispute. Communications between plaintiff and Pulse regarding destruction of the submitted documents have likewise been unresolved. *Id*. Ex. 34.[1] Defendant filed the instant motion on February 23, 2012, seeking an order of contempt against plaintiff and requesting that the court order plaintiff to petition the Nevada court to strike its submissions and retract the evidence produced to Pulse. *See* Dkt. No. 383.

## II. DISCUSSION

A court may issue a civil contempt order when a party fails to comply with a specific and definite court order. *In re Dual-Deck Video Cassette Recorded Antitrust Litig.*, 10 F.3d 693, 695 (9th

---

[1] Plaintiff attests that once it learned of defendant's opposition to the disclosure, it requested that Pulse destroy all copies of defendant's deposition transcripts and exhibits. *See* Dkt. No. 386 Ex. 34.

Cir. 1993). While the failure to comply need not be willful, a person should not be held in contempt if his or her action appears to be based on a good faith and reasonable interpretation of the court's order. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1363 (9th Cir. 1987); *see also In re Dual-Deck*, 10 F.3d at 695. "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *Id*. (internal quotations omitted). To grant a motion for an order of contempt, the court must therefore find that (1) a party violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Id*.

      The instant motion raises questions similar to those addressed in *Dual Deck*. In that case, the Ninth Circuit considered whether the plaintiff had substantially complied with a protective order despite its use of discovery from one lawsuit to advance a second lawsuit. The protective order at issue had language that prohibited the parties from using information obtained in discovery in any way "whatsoever" in any other action. *Id*. The court first found the protective order vastly over-inclusive because it was "written by defendants' lawyers to throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit." *Id*. As such, the protective order did not connect its "prohibitions with its purpose–protection against disclosure of commercial secrets." *Id.* The court thus concluded that despite the protective order's broad language, a "reasonable reading" of the order restricted only the disclosure of "secret" material. *Id*. The court then held that plaintiff had substantially complied with the order, noting that plaintiff "went to great lengths to avoid revealing in the public findings anything it had learned in discovery," including filing such material under seal. *Id*. at 696. *Dual Deck* therefore stands for the proposition that in determining whether a party has "substantially complied" with a protective order, the court must consider both the language of the order and its purpose.

1  Here, defendant argues that plaintiff violated three provisions of the protective order:
2  paragraph 4, paragraph 8, and paragraph 9.[2] Paragraph 4 is intended to allow the parties the
3  opportunity to designate portions of a deposition transcript as "confidential" or "highly confidential
4  – attorneys' eyes only" in order to restrict their disclosure. The purpose of paragraph 8 is to limit the
5  use of "protected information" to the instant action. The purpose of paragraph 9 is to restrict who has
6  access to such information. As a whole, these provisions are plainly intended to limit the
7  dissemination of sensitive, confidential information obtained in discovery.

With this purpose in mind, the court finds that plaintiff's conduct, while questionable, does not justify the imposition of an order of contempt. The disputed materials may be *embarrassing* to defendant in that they tend to cast doubt on the credibility of two its employees, but they do not appear to contain trade secret information or information that could otherwise benefit a competitor. *See In re Dual-Deck*, 10 F.3d at 694 ("The defendants have not claimed that Go-Video disclosed

---

[2] The protective order provides:

**Paragraph 4**: To designate information in a deposition transcript, a party may request that the court reported mark those pages of the transcript containing PROTECTED INFORMATION. Such requests shall be made on the record whenever possible, but any party may designate portions of the transcript as either "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL," provided that these designations are made in good faith and such designations are disclosed to the other parties in the action within ten calendar days after receipt of the official transcript. To give each other party an opportunity to review the transcript for PROTECTED INFORMATION, the parties shall not disseminate a deposition transcript of the contents thereof to anyone not permitted to access PROTECTED INFORMATION for a period of fourteen calendar days after the receipt of the official transcript, except that portions of the transcript may be filed with the Court along with a request for sealing under Civil Local Rule 79-5.

**Paragraph 8**: PROTECTED INFORMATION shall be maintained in confidence by the party receiving it and may be used solely for the purpose of conducting this litigation, and not for any other purpose whatsoever. For example, and without limitation, PROTECTED INFORMATION shall not be used by any party for any purpose in connection with any reexamination of any of the patents-in-suit in this case or any other litigation involving the same parties without the written consent of the producing party.

**Paragraph 9**: Access to PROTECTED INFORMATION "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" shall be restricted to (1) the Court and any person the Court employs whose duties require access to the information, including jurors, (2) any other court having jurisdiction over this action and any person the court employs whose duties require access to the information, (3) outside counsel of record of the parties, including their necessary support personnel (including third-party litigation support vendors, such as copying services, (4) officers before whom a deposition or other testimony is taken (including without limitation, stenographic reporters and videographers) and necessary clerical and support personnel who are assisting such officers, and (5) other individuals and business entities as specified.

ORDER DENYING DEFENDANT'S MOTION FOR ORDER OF CONTEMPT—No. 07-CV-06222 RMW
CVH                                                6

confidential information ... or that any competitor or anyone else learned anything inappropriate from Go-Video's use of discovery."). Indeed, at oral argument, defendant's counsel could not provide a satisfactory answer as to why defendant was prejudiced by the disclosure or why such materials should be afforded confidential status. Furthermore, to the extent that the materials contain information covered by the protective order, the designation of the transcripts and exhibits as "Attorneys' Eyes Only" in the Nevada action largely maintains their protected status. *See id.* at 696. As the transcripts are already designated "Attorneys' Eyes Only" in their entirety, the fact that defendant was not afforded the requisite fourteen days to review the transcripts is a "harmless technical violation[]" of paragraph 4 of the protective order. *Id.* The court thus finds that defendant has failed to show by clear and convincing evidence that plaintiff did not "substantially comply" with a court order.

Moreover, the court is reluctant to preclude plaintiff from using the disputed materials where doing so might undermine the integrity of the Nevada proceeding. At the time of Mr. Luk's deposition in November 2010, defendant had not yet produced the emails showing that Mr. Luk had offered to falsify documents in the California action. Because Pulse purportedly plans play a video of this deposition in the Nevada action rather than call Mr. Luk as a live witness, exclusion of the materials could deprive plaintiff of an opportunity to meaningfully impeach his testimony. Of course, it is not for this court to say whether such materials are admissible in the Nevada proceeding. Nor does the fact that plaintiff believes the materials to be relevant to Mr. Luk's credibility justify its violation of a court order. However, in determining the appropriate response to plaintiff's conduct, the court will balance the need to enforce the protective order against the possibility of condoning the submission of false testimony in the Nevada action.

Finally, the court finds that plaintiff reasonably understood that the challenged disclosure was allowed under the terms of the stipulation email. The email indicated that defendant wanted to avoid duplicative discovery, and therefore that "responsive" materials produced in the California action could be used in the Nevada action as long as any sensitive documents were designated "Attorneys' Eyes Only." Dkt. No. 386, Ex. 21. Defendant argues that the scope of the stipulation email was limited to those materials produced before November 2010, and was not intended provide

"carte blanche" to disclose subsequently produced materials. However, the email clearly noted that "ESI production is ongoing ... and would also include responsive documents." *Id.* As the disputed email exhibits were apparently produced during the "ongoing" discovery of electronically stored information, it was not unreasonable to assume that such materials fell within the scope of the stipulation email. Thus, although defendant is correct in arguing that "[g]ood intentions cannot sterilize conduct otherwise contemptuous," *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985), the fact that plaintiff appeared to believe in good faith that its disclosure was permissible also informs the court's determination of the appropriate remedy.

Under these circumstances, the court concludes that an order of contempt is not warranted. However, because the protective order in the California action does not provide a mechanism for modification by stipulation or written consent of the parties, plaintiff should have requested this court's permission before disclosing the disputed materials in the Nevada action. *Cf. Harmston v. City and County of San Francisco*, No. 07-01186 SI, 2007 WL 3306526, at *6 n.3 (N.D. Cal. Nov. 6, 2007) ("The protective order is clear that material designated as confidential is to be treated as such until the Court rules otherwise, regardless whether the parties were justified in their designations."). Accordingly, the court orders as follows:

(1) To the extent that plaintiff wants to use the disputed materials in the Nevada action, it must move to modify the protective order in this action.

(2) Plaintiff must immediately notify the Nevada court that the materials are subject to a protective order in this action, and include a copy of such notification with its motion for modification.

It is so ordered.

DATED:___May 7, 2012_____        *Ronald M. Whyte*

                                                          RONALD M. WHYTE
                                                          United States District Judge

ORDER DENYING DEFENDANT'S MOTION FOR ORDER OF CONTEMPT—No. 07-CV-06222 RMW CVH
9